STATE of Iowa, Appellee,

v.

Nathan Blake WATSON, Appellant.

No. 99–0264.

Supreme Court of Iowa.

Nov. 16, 2000.

As Amended on Denial of Rehearing
Jan. 2, 2001.

Linda Del Gallo, State Appellate Defender, and Tricia A. Johnston, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, and Connie S. Ricklefs, County Attorney, for appellee.

TERNUS, Justice.

The defendant, Nathan Watson, was convicted of murdering his father. On appeal, he claims that the trial court should have sua sponte held a hearing on whether his trial counsel suffered from a conflict of interest based on counsel's dual representation of the defendant and a key prosecution witness. We agree that such a hearing was required under the Sixth Amendment to the United States Constitution. Therefore, we reverse and remand.

## I. Background Facts and Proceedings.

At the time of the events giving rise to Watson's conviction, Watson lived with his father, Rocky Chase, in a converted school bus located on property belonging to Watson's aunt and uncle, Janet and Gene Chase. In the early morning hours of January 16, 1998, Watson ran to the next-door residence of his aunt and told her that his father had shot himself. Law enforcement authorities arrived and determined that Rocky had been shot in the forehead at close range with a shotgun. Disbelieving that Rocky's death was a suicide, the county attorney charged Watson with first-degree murder. See Iowa Code §§ 707.1, .2(1) (1997).

The defendant pled not guilty, maintaining that the shooting was accidental or self-inflicted. Tim Ross-Boon and Brian Sissel of the Linn County Public Defender's Office were appointed to represent the defendant.

The case was tried to a jury. The testimony of expert witnesses called by both sides was conflicting as to whether the shooting was intentional or accidental.

Of greater importance to the present appeal, however, was the testimony of a prosecution witness, David Grunewald. Grunewald testified on direct that he and Watson occupied adjoining cells at the county jail and that Grunewald overheard Watson say "demons made him shoot his dad." Grunewald also testified that his criminal record included, among other things, burglary, public intoxication and possession of marijuana. Grunewald said that he received no benefit for his testimony and came forth voluntarily.

Defense attorney Sissel cross-examined Grunewald. He brought out the fact that Grunewald was a friend of Rocky and saw Rocky almost every day, including the day before Rocky's death. Grunewald testified that when he heard of the shooting on the morning of the 16th, he called Janet and then visited her later that same day. Sis-

sel also established on cross-examination that Grunewald was a substance abuser. Of significance to the issue on appeal was Grunewald's testimony that criminal contempt charges were pending against him at the time he came forward with information concerning Watson's incriminating statement. Grunewald testified that he and his attorney, Ross-Boon (the same Ross-Boon who represented the defendant), had discussed his sentencing with the county attorney before Grunewald told authorities of Watson's statement. Grunewald, however, acknowledged that his sentencing occurred after he told the jailer that Watson had admitted killing his father. Grunewald testified that he was sentenced to serve fourteen days in jail, although the maximum sentence possible was thirty days. It appeared from the record that Grunewald had served his sentence prior to testifying in Watson's trial.

As our review of Grunewald's testimony shows, Grunewald's cross-examination revealed that Ross–Boon simultaneously represented Grunewald and the defendant for some portion of the pre-trial period, including the period during which Grunewald overheard Watson's incriminating statement, reported it to the authorities, and was sentenced on his contempt conviction. No objections were made by anyone at trial concerning the propriety of Ross–Boon's representation of the defendant, and the trial court did not initiate an inquiry into the matter.

The jury returned a conviction of first-degree murder. This appeal followed.

■ On appeal, Watson asserts that his attorney, Ross–Boon, had an actual conflict of interest or a serious potential conflict of interest when he maintained dual representation of the defendant and Grunewald, a key prosecution witness whose interests were adverse to the defendant. Watson claims that this situation should have been apparent to the trial court upon Grune-

wald's testimony and that the trial court had a duty sua sponte to make an inquiry. The trial court's failure to do so, argues the defendant, requires automatic reversal of his conviction.[1] Because Watson raises a constitutional issue, our review is de novo. *See State v. Vanover*, 559 N.W.2d 618, 627 (Iowa 1997).

## II. *Applicable Legal Principles.*

■ The Sixth Amendment to the Federal Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional guarantee is binding on the states. *See Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975). Defendants are entitled not only to counsel, but also to counsel that is "zealous and active." *Powell v. Alabama*, 287 U.S. 45, 58, 53 S.Ct. 55, 60, 77 L.Ed. 158, 165 (1932). The purpose of this Sixth Amendment provision is " 'to ensure that criminal defendants receive a fair trial.' " *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1696–97, 100 L.Ed.2d 140, 148 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984)).

One of the first United States Supreme Court cases to consider a deprivation of the Sixth Amendment right to counsel due to a conflict of interest was *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In that case, an attorney representing one defendant, Glasser, was appointed, over objection, to represent a codefendant, Kretske. *Glasser*, 315 U.S. at 68–69, 62 S.Ct. at 464, 86 L.Ed. at 698. During trial, counsel failed to undertake the cross-examination of a witness that might have been helpful to Glasser because of counsel's admitted desire to protect Kretske. *Id.* at 73, 62 S.Ct. at 466, 86

---

1. Defendant also alleges he received ineffective assistance from trial counsel based on Ross–Boon's failure to withdraw. Because we conclude the defendant's conflict-of-interest claim requires reversal, we do not reach his failure-to-withdraw claim.

L.Ed. at 700. Similar conflicts were present with respect to the admission of other evidence. *Id.* The Court held that Glasser's Sixth Amendment right to the effective assistance of counsel had been denied and that this denial required that the defendant's conviction be set aside and a new trial ordered. *Id.* at 76, 62 S.Ct. at 468, 86 L.Ed. at 702. In reaching this conclusion, the Court noted that

> [t]o determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.

*Id.* at 75–76, 62 S.Ct. at 467, 86 L.Ed. at 702.

In a later case, *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Court interpreted *Glasser* to mandate automatic reversal "whenever a trial court improperly requires joint representation over timely objection." 435 U.S. at 488, 98 S.Ct. at 1181, 55 L.Ed.2d at 437. Moreover, reversal is required "even if no particular prejudice is shown and even if the defendant was clearly guilty." *Id.* at 489, 98 S.Ct. at 1181, 55 L.Ed.2d at 437. In such situations, "prejudice is presumed regardless of whether it was independently shown." *Id.* The rationale underlying this presumed prejudice rule lies in the fact that "the evil [of representing conflicting interests] is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Id.* at 490, 98 S.Ct. at 1182, 55 L.Ed.2d at 438. The United States Court of Appeals for the Fifth Circuit, in a case of dual representation, gave a similar reason for presuming prejudice:

> When there is a conflict of interest ... the prejudice may be subtle, even unconscious. It may elude detection on re-

view. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real ... a denial of the right to effective representation exists, without a showing of specific prejudice.

*Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir.1974); *accord Zuck v. Alabama*, 588 F.2d 436, 440 (5th Cir.1979) ("A cold, dispassionate appellate transcript simply cannot provide an adequate basis for assessing [defense counsel's] performance, for subtle variations in demeanor and depth of cross-examination cannot be reflected in the pages of a transcript.").

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court considered a Sixth Amendment claim made by a defendant who had not objected at trial to his counsel's joint representation of another defendant. The Court indicated that joint representation of codefendants does not always give rise to a conflict of interest, presumably because, as the Court noted later in its opinion, a common defense is often the best defense. *Cuyler*, 446 U.S. at 347, 348, 100 S.Ct. at 1717, 1718, 64 L.Ed.2d at 345, 346. Therefore, the Court held that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 346. Moreover, if the trial court record shows merely a possibility of a conflict, prejudice will not be presumed. *Id.* at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. Rather, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.*

The circumstances under which the trial court must initiate an inquiry were demonstrated in the later case of *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). In *Wood*, the defendants had been convicted of distributing

obscene materials while employed at an "adult" theatre and bookstore. 450 U.S. at 263, 101 S.Ct. at 1099, 67 L.Ed.2d at 225. An attorney retained by their employer represented them at subsequent probation revocation hearings. *Id.* at 266, 101 S.Ct. at 1100–01, 67 L.Ed.2d at 227. Despite the defendants' failure to object to the representation provided to them, the Court considered on appeal whether their attorney had a conflict of interest that necessitated some relief. *Id.* at 265 n. 5, 101 S.Ct. at 1100 n. 5, 67 L.Ed.2d at 226–27 n. 5. The Court stated that although it could not determine on the record "whether an actual conflict of interest was present," "the record does demonstrate that the possibility of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the [trial] court a duty to inquire further." *Id.* at 272, 101 S.Ct. at 1104, 67 L.Ed.2d at 230–31. Accordingly, the Court vacated the judgment rendered at the revocation hearing and remanded the case for a hearing to determine whether an actual conflict of interest existed. *Id.* at 273, 101 S.Ct. at 1104, 67 L.Ed.2d at 231. The Court stated that if the court on remand finds that an actual conflict existed that the defendant did not waive, a new revocation hearing would be required. *Id.* at 273–74, 101 S.Ct. at 1104, 67 L.Ed.2d at 231.

Courts considering conflict-of-interest claims have disagreed on when the *Cuyler* test, which requires a showing that counsel's performance was adversely affected by the conflict, applies. Some courts have held that the *Cuyler* standard applies whenever the defendant has failed to object to counsel's representation at trial. *See, e.g., Atley v. Ault,* 191 F.3d 865, 869 (8th Cir.1999) (stating that *"Cuyler* applies, however, only to those cases in which a defendant raises no objection to his counsel's representation at or before trial"); *State v. James,* 111 N.C.App. 785, 433 S.E.2d 755, 757 (1993) (citing *Cuyler* for the proposition that "a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely

affected the performance of his lawyer"). Other courts have concluded that the *Cuyler* standard governs only when the trial court is reasonably unaware of the particular conflict. *See, e.g., Cabello v. United States,* 188 F.3d 871, 875 (7th Cir. 1999) (noting that *Cuyler* standard does not apply "if the defendant or her attorney alerted the trial judge to a possible conflict of interest *or* the judge otherwise knew or reasonably should have known that such a possibility existed" (emphasis added)); *United States v. Fish,* 34 F.3d 488, 492 (7th Cir.1994) (stating *Holloway* automatic reversal rule applies where trial court fails to inquire "[w]hen the defendant raises the issue *or* the trial judge otherwise knows or reasonably should know of the possibility of a conflict of interest" (emphasis added)); *State v. Jenkins,* 257 Kan. 1074, 898 P.2d 1121, 1129 (1995) (holding that where "trial court was presented with information that established an actual conflict—defense counsel represented the key prosecution witness," the defendant need not show that the conflict adversely affected his lawyer's performance, even though the defendant made no objection at trial). Under the latter line of cases, the application of *Cuyler* does not turn on whether the defendant objected, but rather turns on whether the conflict of interest was brought to the trial court's attention in some way. Which line of authority we follow is important in the present case because Watson did not object at trial to Ross-Boon's representation.

■ Our review of the cases leads us to agree with those courts holding that where the trial court knew or should have known of a particular conflict, reversal is required without a showing that the conflict adversely affected counsel's performance, even though no objection was made at trial. This conclusion is consistent with the Supreme Court's interpretation of *Cuyler* in *Wood,* where it said that *Cuyler* "mandates a *reversal* when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'" *Wood,* 450 U.S.

at 273 n. 18, 101 S.Ct. at 1104 n. 18, 67 L.Ed.2d at 231 n. 18 (emphasis added). Logic also supports this result. If the trial court knows that a particular conflict exists and fails to conduct an inquiry, it should not matter what the source of the court's knowledge is. Regardless of how the trial court becomes aware of the conflict, the defendant has been denied his right to independent counsel. It is only in cases of uncertainty, where the record shows the mere *possibility* of a conflict, that the additional requirement of an adverse effect on counsel's performance is required to establish an *actual* conflict.[2] *See also United States v. Martin*, 965 F.2d 839, 842 (10th Cir.1992) ("Under the Supreme Court's standard set forth in *Cuyler*, *in order to establish an actual conflict*, Defendant has the burden of showing specific instances to support his contention of an actual conflict adverse to his interests." (Emphasis added.)).

 Having resolved this conflict as to the circumstances under which the *Cuyler* test applies, we now set forth the legal principles applicable to conflict-of-interest claims such as the one before us, where the claim is raised for the first time on appeal. A trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it "knows or reasonably should know that a particular conflict exists." *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 346. If an actual conflict existed and the trial court knew or should have known of the conflict, yet failed to make inquiry, reversal is required. *See Wood*, 450 U.S. at 273 n. 18, 101 S.Ct. at 1104 n. 18, 67 L.Ed.2d at 231 n. 18. If the record on appeal shows only the possibility of a conflict, then the case must be remanded for a determination as to whether an actual conflict existed and/or whether the defendant made a valid waiver of his right to independent counsel.[3] *See id.* at 273–74, 101 S.Ct. at 1104, 67 L.Ed.2d at 231–32. If, on remand, an actual conflict is found, prejudice is presumed and reversal is mandated. *See id.; Holloway*, 435 U.S. at 488, 98 S.Ct. at 1181, 55 L.Ed.2d at 437. If there is no indication that the trial court knew or should have known of an actual conflict, and defendant made no objection to his representation, then the defendant, in order to obtain a reversal on appeal, must prove that his counsel rendered ineffective assistance by proving that an actual conflict adversely affected counsel's performance. *See Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346–47.

### III. *Application of Legal Principles to Facts.*

 The testimony of prosecution witness Grunewald revealed to the trial

---

2. Even if we were to apply the *Cuyler* standard, reversal is required. Ross-Boon's simultaneous representation of the defendant and Grunewald during the time Watson allegedly made the incriminating statement and Grunewald came forward with this information "resulted in an unavoidable conflict as to confidential communications and affected counsel's ability to effectively impeach the credibility of [the] witness...." *James*, 433 S.E.2d at 758. In *James*, the North Carolina court held that the simultaneous representation of the defendant and a prosecution witness created an unavoidable conflict that on its face adversely affected defense counsel's performance. *Id.* The court gave, as an example of this conflict, defense counsel's failure to explore the plea agreement between the state and the witness. *Id.* Similar failures existed here. Although defense counsel estab-

lished in his cross-examination of Grunewald that Grunewald was not sentenced until after he had informed law enforcement of Watson's incriminating statement, counsel did not challenge Grunewald's denial that his cooperation with the authorities had no impact on his sentence in his criminal case. Nor did defense counsel explore whether Grunewald's substance abuse problem affected his cognitive abilities on the date he overheard Watson talking about Rocky's death. Similarly, Grunewald's relationship with the decedent was not probed to reveal any bias or animosity Grunewald might have toward the defendant. Grunewald's cross-examination simply lacked any aggressive questioning to challenge his credibility.

3. No claim of waiver is made in the present appeal.

court that Grunewald was represented by defense counsel Ross-Boon during the pre-trial stages of Ross-Boon's representation of Watson. The testimony established that this period of simultaneous representation included the time frame when Grunewald overheard Watson make an incriminating statement, when Grunewald reported this statement to the police, and when Grunewald was sentenced on the contempt charge. Based on this testimony, the trial court knew of Ross-Boon's dual representation of the defendant and a key prosecution witness. We next consider whether this dual representation gave rise to an actual conflict.

■■■ Although most conflict of interest cases arise in the context of one attorney representing multiple defendants, a conflict of interest can arise in other factual scenarios. Basically, "a conflict exists when an attorney is placed in a situation conducive to divided loyalties." *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir. 1991); *accord State v. Atley,* 564 N.W.2d 817, 834 (Iowa 1997) (Lavorato, J., dissenting). We think that, under this standard, an actual conflict of interest existed in the present case.

Unlike the joint representation of codefendants, where there may be a benefit to presenting a united defense, in the case of dual representation of the defendant and an adverse witness, there is no benefit to common representation. To the contrary, the potential for less zealous representation of the defendant is obvious. In a case of dual representation of the defendant and a prosecution witness, the Pennsylvania Superior Court analyzed the divergence of interests that is the hallmark of a conflict of interest:

> [The defendant's] interest and [the witness's] interest diverged with respect to [the attorney's] cross-examination of [the witness]. [The attorney] had an obligation to [the defendant] to use all the information at his disposal to impeach [the witness's] credibility. Yet, [the attorney] also had an obligation to [the witness] to maintain the confidentiality of [the witness's] communications with the Defender Association. Given these inconsistent duties, counsel was forced to make a "Hobson's choice."

> One might argue that [the attorney] had a greater responsibility to [the defendant] than to [the witness]. Yet, the importance of maintaining client confidences cannot be lightly disregarded. Any statements made by [the witness] to the Defender Association in connection with his legal representation were covered by the attorney-client privilege. Moreover, a heightened concern for protecting confidences is particularly appropriate where a lawyer is called upon to cross-examine an individual whom his office represents....

> We find that counsel had a duty to protect [the witness's] rights as well as a duty to protect [the defendant's] rights. Thus, an "actual conflict of interest arose."

*In re Saladin,* 359 Pa.Super. 326, 518 A.2d 1258, 1261–62 (1986) (citations omitted). Other courts have also concluded that an actual conflict of interest exists when an attorney represents the defendant and a prosecution witness. *See, e.g., Castillo,* 504 F.2d at 1245 (finding actual conflict where the defendant's attorney also represented the victim of the defendant's crime in an unrelated civil matter, noting that the attorney "is likely to be restrained in the handling of that client/witness"); *Porter v. United States,* 298 F.2d 461, 463 (5th Cir.1962) (holding, in case where criminal defendant sought to prove entrapment by police officer, that actual conflict would exist if defense attorney also represented the implicated officer in an unrelated matter); *United States ex rel. Williamson v. LaVallee,* 282 F.Supp. 968, 971 (E.D.N.Y. 1968) (finding actual conflict of interest where defense attorney represented important prosecution witness); *United States ex rel. Miller v. Myers,* 253 F.Supp. 55, 57 (E.D.Pa.1966) (finding conflict of interest where attorney represented defendant and victim witness); *James,* 433

S.E.2d at 758 (holding that representation of defendant and witness "resulted in an unavoidable conflict as to confidential communications").

The State attempts to distinguish these authorities on two bases: (1) Ross-Boon no longer represented Grunewald at the time of trial; and (2) Ross-Boon did not cross-examine Grunewald; Ross-Boon's co-counsel, also an attorney with the Public Defender's Office, did. We do not think these facts insulated the defendant's counsel from the actual conflict of interest shown by the record.

We begin our analysis with a review of Ross-Boon's ethical obligations to his clients. Ross-Boon had a duty to Watson to represent him "zealously within the bounds of the law." Iowa Code of Prof'l Responsibility EC 7-1. He also had a duty to Grunewald to maintain the confidences of Grunewald, *see id.* Canon 4, in other words, not to reveal information protected by the attorney-client privilege, *see id.* DR 4-101(A). Not only was defense counsel obliged to refrain from revealing the "confidences" of Grunewald, he was also obligated to preserve the "secrets" of Grunewald. *See id.* Canon 4. The term "secrets" is much broader than "confidences." It includes any "information gained in the professional relationship ... the disclosure of which would be embarrassing or would be likely to be detrimental to the client." *Id.* DR 4-101(A). Moreover, Ross-Boon's ethical obligation to preserve the confidences and secrets of Grunewald "exist[ed] without regard to the nature or source of [the] information or the fact that others share[d] the knowledge." *Id.* EC 4-4. Of equal importance to the present case is the fact that the ethical obligations of defense counsel extended beyond a prohibition of merely revealing Grunewald's confidences and secrets. Counsel was also obligated to refrain from *using* Grune-

wald's confidences or secrets "to the disadvantage of [Grunewald]" *or* "for the advantage ... of a third party." *Id.* DR 4-101(B)(2)-(3); *see also Williamson,* 282 F.Supp. at 971 (noting that one "danger in being represented by an attorney who is also representing a prosecution witness is that the scope of examination of the witness by the attorney might be restricted by the fact that the attorney has learned confidential information about his client-witness which cannot be revealed"); *People v. Coleman,* 301 Ill.App.3d 290, 234 Ill.Dec. 525, 703 N.E.2d 137, 144 (1998) (holding that defense counsel's "duty of confidentiality owed [client/witness] precluded the use of any helpful information that [client/witness] may have divulged to [defense counsel]" in criminal trial of counsel's client/defendant).

With this background, we now consider the State's contention that no conflict existed because, by the time of trial, Ross-Boon no longer represented Grunewald. We initially point out that there was simultaneous representation of Watson and Grunewald during some portion of the pretrial period.[4] Thus, defense counsel's pretrial investigation was burdened with the conflict between Grunewald's interests and Watson's interests. *See Coleman,* 234 Ill. Dec. 525, 703 N.E.2d at 144 (noting that defense counsel owed duty to client/witness during trial preparation as well as during trial). Ross-Boon's efforts to ferret out impeachment material based on the relationship between Grunewald and the victim, based on Grunewald's substance abuse problem, or based on any other ground would be dampened by the fact that he also represented Grunewald and had to ensure that he used no information gained in his relationship with Grunewald to Grunewald's disadvantage or to Watson's advantage.

**4.** The State argues that this case is one of "past representation" of a prosecution witness by defense counsel, a characterization we reject. Whether prior representation of a witness that did not overlap with counsel's representation of the defendant would create a conflict of interest must be decided on an ad hoc basis.

In addition, we think defense counsel's divided loyalties survived the termination of the attorney-client relationship between Ross-Boon and Grunewald. The end of this relationship did not lessen Ross-Boon's ethical obligation to Grunewald. He was still bound to maintain Grunewald's confidences and secrets. *See* Iowa Code of Prof'l Responsibility EC 4–6 ("The obligation of a lawyer to preserve the confidences and secrets of a client continues after the termination of employment."). Simultaneously with his obligation not to use any "information gained in [his] professional relationship" with Grunewald the disclosure of which would be embarrassing or detrimental to Grunewald, *id.* DR 4–101(A), Ross-Boon was also obligated to zealously represent Watson by impeaching Grunewald with any information available to Ross-Boon. Clearly the impeachment of Grunewald would be embarrassing to Grunewald and would help Watson. *See Okeani v. Superior Ct.,* 178 Ariz. 180, 871 P.2d 727, 728 (Ct.App.1993) (holding that, in fulfilling duty to client/defendant by impeaching client/witness, counsel causes an adverse effect on client/witness, which "is clearly a conflict of interest"). In our opinion, Ross-Boon was burdened by an actual conflict of interest at trial despite the fact that he no longer represented Grunewald. *See id.* at 729 (holding that conflict was not resolved simply because the witness's legal matter had been resolved before trial and "she thus had become a former client of the Public Defender"); *Coleman,* 234 Ill.Dec. 525, 703 N.E.2d at 144 (holding that defense counsel's withdrawal as counsel for witness before witness's testimony did not cure the conflict).

As for the State's second argument—that Ross-Boon did not cross-examine Grunewald—we point out that attorneys in the same office are permitted to share confidences. *See* Iowa Code of Prof'l Responsibility EC 4–2 ("Unless the client otherwise directs, a lawyer may disclose the affairs of a client to partners or associates of the lawyer's firm."). Therefore, all members of the Public Defenders Office were bound to protect Grunewald's confidences and secrets. Thus, Ross-Boon's co-counsel labored under the same conflict of interest as did Ross-Boon.

Moreover, Ross-Boon's obligation to zealously represent his client, the defendant, was not suspended simply because his co-counsel was the one who asked Grunewald questions on the witness stand. Ross-Boon still had an obligation to Watson to contribute what he could to the defense team's preparation for Grunewald's cross-examination, including pre-trial investigation. We conclude, therefore, that Ross-Boon's decision not to personally examine Grunewald was insufficient to remove the actual conflict of interest that burdened Watson's defense team. *See Ross v. Heyne,* 638 F.2d 979, 984–85 (7th Cir.1980) (finding actual conflict where counsel had access to confidences of witness who was associate's client); *Okeani,* 871 P.2d at 728 ("The conflict of interest is not alleviated by the fact that defendant and the victim were represented by different lawyers with the Public Defender's Office."); *In re Saladin,* 518 A.2d at 1260 n. 4 ("Even the representation of two clients by different attorneys employed by the same Defender Association constitutes dual representation for the purpose of conflict of interest analysis.").

## IV. *Conclusion.*

We hold that the defendant's trial counsel had an actual conflict of interest that the trial court knew or should have known existed when the court became aware of counsel's dual representation of the defendant and a key prosecution witness.[5] Un-

---

**5.** Our conclusion that an actual conflict of interest existed should not be viewed as a condemnation of Watson's trial attorneys, who we trust attempted to render a competent and vigorous defense of Watson consistent with principles of professional responsibility. Nevertheless, when an actual conflict of interest is apparent, we must conclude that a defendant has been denied his Sixth Amend-

der these circumstances, the court was obligated sua sponte to hold a hearing on the propriety of the defendant's representation by the Linn County Public Defender's Office. The court's failure to conduct such an inquiry mandates reversal. Accordingly, we reverse the defendant's conviction and remand for a new trial where the defendant shall be represented by counsel unburdened by a conflict of interest.

**REVERSED AND REMANDED.**

McGIVERIN, S.J.*, participates in place of SNELL, J., who takes no part.

ment right to counsel, a right that entitles the defendant to counsel with undivided loyalties.