STATE of Iowa, Appellee,

v.

Michael Terry WILLIAMS, Appellant.

No. 01–0954.

Court of Appeals of Iowa.

Aug. 14, 2002.

 

Maggi Moss and Jennifer Larson of Parrish, Kruidenier, Moss, Dunn, Montgomery, Boles & Gribble, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Richard J. Bennett and Doug Hammerand, Assistant Attorneys General, for appellee.

Heard by VOGEL, P.J., and MILLER and VAITHESWARAN, JJ.

VOGEL, P.J.

Michael Williams appeals from a district court determination that no actual conflict of interest was created by romantic relationships existing between members of the public defender's office and the office of the county attorney. We affirm.

***Background Facts and Proceedings.*** Michael Williams appealed his 1999 convictions for murder in the first degree and robbery in the first degree upon a number of grounds, including an allegation the trial court's failure to inquire into a conflict of interest deprived him of his right to a fair trial and to due process of law. In *State v. Williams*, No. 99–0551, 2000 WL 1157832 (Iowa Ct.App. Aug.16, 2000) (*Williams I*), this court affirmed the district court proceedings on a number of grounds, but remanded for a "hearing and decision on the conflict of interest issue consistent with this opinion." Rejecting Williams's contention that the district court's failure to conduct an inquiry into alleged conflicts of interest required an automatic reversal of his conviction, we held Williams bore the burden of demonstrating a Sixth Amendment violation by showing an actual conflict of interest existed and that such conflict had adversely affected his lawyer's performance.

The district court was given very specific instructions upon remand:

we remand this case to the district court for a hearing to determine whether an actual conflict of interest existed by virtue of the relationships between Williams's counsel and an assistant county attorney and between another member of the public defender's office and the prosecutor's office. On remand, the district court should hear evidence on and decide the following questions: (1) Did the relationships among attorneys in the county attorney's office and the public defender's office result in a breach of counsel's duty to preserve Williams's confidences and secrets? (2) Did the relationships result in a breach of counsel's duty to exercise independent professional judgment on behalf of Williams? (3) Did counsel fail, because of the relationships, to represent Williams zealously? If the court finds there was an actual conflict of interest, the court should then decide whether the conflict actually affected the adequacy of his representation. Finally, if it is determined an actual conflict affected the adequacy of representation, the court should then determine whether Williams made a knowing and voluntary waiver of conflict-free counsel by consenting to the representation on the record.

At the hearing on limited remand it was established that Williams was arrested on July 27, 1998, and that the Cerro Gordo County Public Defender's Office was appointed to represent him the next day.

Assistant Public Defender Leslie Hult, who had become engaged to Assistant Cerro Gordo County Attorney Carlyle Dalen in June 1998, was assigned to Williams's case. Susan Flander, the supervising attorney with the public defender's office, was assigned as co-counsel. Katherine Evans, another felony defense attorney with the public defender's office, had been married to Assistant Cerro Gordo County Attorney Gregg Rosenbladt since 1995. Although Evans was not involved with Williams's representation, Rosenbladt was assigned as co-counsel on Williams's prosecution, along with Assistant Attorney General Doug Hammerand.

On July 30, 1998 Hult presented Williams with a form disclosing the relationship between Evans and Rosenbladt, and Williams gave written consent to continued representation. On September 2, 1998, the public defender's office requested an opinion from the Iowa Supreme Court Board of Professional Ethics and Conduct (the Board) as to whether the office was required to disclose either an engagement or marriage between a public defender and an assistant county attorney. On December 3, 1998 the Board issued its opinion that the relationships must be disclosed and that client consent must then be obtained. The Board further noted that "[t]his *can* also involve differing interests (conflict) in which event you would either

have to refuse employment or resign." (emphasis added).[1]

The office changed its disclosure form to indicate the relationship between Hult and Dalen and presented the revised form to new clients. The revised form was not presented to existing clients, including Williams. It was not until February 22, 1999, approximately a week before his March 2 trial date, that Williams learned of the engagement from another inmate. He confronted Hult with the information during a jailhouse meeting on Friday, February 26. At that time Hult explained Dalen was not involved with Williams's prosecution, that her loyalties lay with Williams, and that she had not and would not jeopardize his defense. She also advised Williams he could have another attorney appointed to his case, but that if he did so it was unrealistic to expect to proceed to trial as scheduled.

After Flander and/or Hult attempted but failed to visit Williams in jail the following day, Flander sent Williams a letter formally disclosing Hult and Dalen's relationship, advising him that he needed to consider whether he wished to consent to continued representation, informing him of his options, and enclosing the revised disclosure form for his review. Williams apparently received the letter on Monday, March 1, the same day he met with Flander for thirty to forty-five minutes. At the

---

**1.** Attached to the letter were prior ethics opinions indicating full disclosure and consent would be sufficient to resolve similar potential conflict of interest issues, but noting that withdrawal from representation would be necessary if an actual conflict of interest arose or could be reasonably foreseen. It seems clear from reading the totality of the opinions that it is not the relationships themselves, but the possible consequences flowing from the relationships under the relevant circumstances, that can create a conflict.

Whether or not a conflict exists depends on the facts of each individual case. *See* ABA Formal Op. 340 (1974) ("No disciplinary rule expressly requires a lawyer to decline employment if a ... close relative represents the opposing party.... We cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule."). We find it important to note the Board did not opine Hult had an actual conflict interest mandating withdrawal, but only that her particular situation could lead to such a conflict.

end of that meeting Williams signed a consent to continued representation.

There was some dispute as to whether the potential conflict was brought to the court's attention during a pretrial hearing on March 1 or 2.[2] What was undisputed is that after the jury had been selected on March 2, 1999, Hammerand informed the court the Cerro Gordo County Attorney's Office had withdrawn from the case on March 1, due to a potential conflict of interest arising from Hult and Dalen's engagement. Hult informed the court that both her engagement to Dalen and the marriage of Evans and Rosenbladt had been disclosed to Williams, and that he had consented to continued representation. When asked if this statement was correct, Williams replied, "Yes, it is."

After hearing on the limited remand, the district court concluded no actual conflict of interest existed, finding no evidence the alleged conflict "progressed beyond a potential conflict of interest." The court found no evidence that either Dalen or Evans had been involved in Williams's case or had any discussions with Hult regarding any substantive matters. It found no evidence Hult failed to exercise independent professional judgment or failed to zealously represent Williams, noting the specifics of Hult's pretrial preparations, motions and trial performance. The court further found that, even if an actual conflict of interest had existed, Williams had made a knowing and voluntary waiver. Williams appeals.

*Scope of Review.* Because Williams's claims involve his constitutional rights to counsel, our review is de novo. *State v. Watson,* 620 N.W.2d 233, 235 (Iowa 2000).

---

**2.** With varying degrees of certainty, both prosecutorial and defense counsel recalled that an informal hearing occurred off the record on either the afternoon of March 1 or the morning of March 2, that the hearing was

*Proof of Adverse Effect.* Williams first argues this court should not have remanded the conflict of interest issue to the district court for determination of the existence of an actual conflict. Rather, he contends we were required to find the trial court's failure to conduct a further inquiry, when apprised of the potential conflict of interest, mandated this court's reversal of his convictions. As the State correctly points out, Williams failed to avail himself of the appropriate method to challenge our prior holding, through rehearing and/or further review. *See* Iowa R.App. P. 6.28; Iowa Code § 602.4102(4) (1999).

■ Generally speaking, once procedendo issued in the initial appeal, our opinion would become law of the case, binding upon not only the lower courts but upon this court in a later appeal. *See State v. Grosvenor,* 402 N.W.2d 402, 405 (Iowa 1987). A recognized exception to the law of the case doctrine occurs, however, when the controlling law has been clarified by judicial decisions following remand. *United Fire and Cas. Co. v. Iowa Dist. Court for Sioux County,* 612 N.W.2d 101, 103 (Iowa 2000). In light of the case law developed on the subject after our remand to the district court, we will review the standard to be applied to conflict of interest issues.

■ The foundation of this type of claim is an alleged denial of an accused's constitutional right to effective assistance of counsel. U.S. Const. Amend. VI. It is well established that to demonstrate such a claim the accused must ordinarily show "a reasonable probability that, but for counsel's unprofessional errors, the result

in regard to the conflict of interest issue, and that Williams was present and questioned by the court. Williams denied that any such hearing occurred.

of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). However, under certain circumstances, such as when defense counsel is forced to represent conflicting interests over his or her own objections, effect upon the proceedings is presumed, and a resulting conviction is reversed without requiring a showing from the defendant. *Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 437 (1978).

In *Williams I* we acknowledged that such an "automatic reversal" is sometimes warranted, but declined to find it warranted in Williams's case as he had failed to object to the alleged conflict of interest. That determination was based upon language in *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980), where the United States Supreme Court held "a defendant who raised no objection [to the conflict] at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."

Shortly after our opinion in *Williams I*, the Iowa Supreme Court interpreted the United States Supreme Court's holdings in *Holloway, Sullivan,* and *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981):

> [W]here the trial court knew or should have known of a particular conflict, reversal is required without a showing that the conflict adversely affected counsel's performance, even though no objection was made at trial. This conclusion is consistent with the Supreme Court's interpretation of *Cuyler* [*v. Sullivan*] in *Wood,* where it said that *Cuyler* "mandates a *reversal* when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'" *Wood,* 450

U.S. at 273 n. 18, 101 S.Ct. at 1104 n. 18, 67 L.Ed.2d at 231 n. 18 (emphasis added).

*State v. Watson*, 620 N.W.2d 233, 237–38 (Iowa 2000). Accordingly, application of the automatic reversal rule is not precluded merely because Williams failed to object at trial.

■ However, our supreme court further clarified that automatic reversal is not triggered every time differing interests are alleged:

> If the record on appeal shows only the possibility of a conflict, then the case must be remanded for a determination as to whether an actual conflict existed and/or whether the defendant made a valid waiver of his right to independent counsel.

*Id.* at 238. The validity of this interpretation finds support in the recent United States Supreme Court case of *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). *Mickens,* a dual-representation case, clarified that a court's duty of inquiry is triggered only under "special circumstances," and not by awareness of a "vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation.'" *Id.* at ——, 122 S.Ct. at 1242, 152 L.Ed.2d at ——. *Mickens* further clarified that proof of "an actual conflict" requires more than a showing the attorney was subject to a conflict of interest. *Id.* at ——, 122 S.Ct. at 1243, 152 L.Ed.2d at ——. Rather, the Court found the phrase "actual conflict" is merely shorthand for a conflict that actually adversely affected the attorney's performance. *Id.*

Finally, in ruling that the trial court's failure to inquire into a potential conflict of interest would not relieve the defendant from showing an actual effect upon counsel's performance, the court noted:

automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan*-mandated inquiry, makes little policy sense.... The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable. Nor does the trial judge's failure to make the *Sullivan*-mandated inquiry often make it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only becomes established at the trial.

Nor, finally, is automatic reversal simply an appropriate means of enforcing *Sullivan's* mandate of inquiry.... [W]e do not presume that judges are as careless or as partial as those police officers who need the incentive of the exclusionary rule. And in any event, the *Sullivan* standard, which requires proof of effect upon representation but (once such effect is shown) presumes prejudice, already creates an "incentive" to inquire into a potential conflict. In those cases where the potential conflict is in fact an actual one, only inquiry will enable the judge to avoid all possibility of reversal by either seeking waiver or replacing a conflicted attorney. We doubt that the deterrence of "judicial dereliction" that would be achieved by an automatic reversal rule is significantly greater.

*Id.* at ——, 122 S.Ct. at 1244–45, 152 L.Ed.2d at ——. (citations omitted).

The record in the initial appeal demonstrated the existence of relationships that could have led to divided loyalties. It did not, however, indicate whether those relationships had any actual impact upon Williams's representation, and the district court was informed disclosure had been made and consent given. Under prevailing case law, remand for further hearing was the appropriate action.[3]

■ *Actual Conflict.* While we agree with Williams that the public defender's office could have and perhaps should have done a better job disclosing the potential conflicts inherent in the relationships between its own attorneys and those employed by the county attorney's office, this appeal is not a disciplinary action. The question for our consideration is whether Hult's performance was somehow adversely affected due to her relationship with Dalen, and/or as a product of the marriage between Evans and Rosenbladt. *See Watson,* 620 N.W.2d at 238. Looking to the facts of this case, as established on limited remand, we find no proof her performance was so affected.

During the course of Williams's representation Hult, Dalen, Evans and Rosenbladt occasionally socialized, and Hult admitted she had likely discussed the generalities of her many cases with the other attorneys. However, Hult testified no specific information regarding Williams's case was shared, and nothing on remand contradicted this statement. Although Hult and Dalen often spent time in the same residence, Hult stated she did not generally take files or other work-related items home, and there was no evidence Dalen became privy to any confidential information. Williams could

---

**3.** We note the *Mickens* court appeared critical of the "unblinking" application of the *Sullivan* doctrine to "all kinds of alleged attorney ethical conflicts," observing that by its own terms *Sullivan* addressed only an attorney actively representing conflicting interests. *Mickens,* 535 U.S. at ——, 122 S.Ct. at 1245, 152 L.Ed.2d at ——. (citation omitted). For the purpose of this appeal, we presume *Sullivan* was appropriately applied in this case to require a showing of actual prejudice by Williams.

allege only that "other individuals," which was an apparent reference to inmates, witnesses or other non-attorneys, had provided Dalen with "information" about Williams.

Williams was able to establish that the county attorney's office took no formal precautions to insulate any confidential information, and that the public defender's office took only the minimal precautions of assigning each public defender separate file drawers, and instituting a policy that "cases were not discussed between attorneys that would have a husband on the case." However, Hult, Dalen and Rosenbladt all testified that no specific, substantive or confidential information regarding Williams's case was ever revealed or discussed and, again, nothing in the record contradicted these assertions. Finally, Hult denied her personal relationships in any way affected her performance, and this statement is borne out by testimony regarding, and the trial court's stated observations of, Hult's pretrial and trial performance. The only contrary evidence presented by Williams was his own testimony that he had not received effective representation because Hult and Flander failed to carry through with certain unspecified requests he had made of them.

On remand Williams demonstrated only that, if the testimony of the participating attorneys was wholly discounted, the potential existed for the exchange of confidential information. Moreover, nothing indicates Hult's ability to exercise independent professional judgment or zealously represent Williams was negatively affected. We are not willing to impute an adverse impact from the mere existence of the relationships among counsel, as Williams apparently urges us to do. Simply stated, Williams has failed in his burden of showing an actual conflict of interest such that he would be entitled to a new trial. Having considered all the issues presented, we find the district court acted appropriately in upholding Williams's convictions.

**AFFIRMED.**