# IN THE COURT OF APPEALS OF IOWA

No. 20-0786
Filed November 3, 2021

**JAMES FARNSWORTH II,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Christopher C. Foy, Judge.

Applicant appeals the denial of several ineffective-assistance-of-counsel claims raised in his postconviction-relief application following his conviction of second-degree murder. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

James Farnsworth II stabbed Ian Decker with a pocket knife in Mason City. Decker died. The State charged Farnsworth with first-degree murder. A jury found him guilty of second-degree murder. The court of appeals affirmed Farnsworth's conviction. *See State v. Farnsworth*, No. 13-0401, 2014 WL 2884732, at *1 (Iowa Ct. App. June 25, 2014).

Farnsworth filed a postconviction-relief application, raising several ineffective-assistance-of-counsel claims. The district court denied the application following an evidentiary hearing. The court concluded Farnsworth failed to show that his trial attorney "breached an essential duty in representing him at trial or on direct appeal" and "failed to show that [counsel] could have or should have done anything different which would have changed the outcome of his case." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (prescribing elements of ineffective-assistance claim). The court denied a motion for enlarged findings and conclusions. Farnsworth appealed.

I.      *Failure to Retain Forensic Pathologist*

At trial, the State's chief medical examiner testified she performed an autopsy on Decker and "[t]he most significant wound" she discovered was "a stab wound to the left chest." She also discerned "a cutting wound on his left arm" and "a stab wound to the left thigh." She determined the manner of death was "[h]omicide" and the cause of death was a "[s]tab wound to the chest."

On cross-examination, Farnsworth's attorney asked the medical examiner if "the entry would have been more perpendicular as it related to the wound to the

chest." The medical examiner responded that neither the wound to the chest nor the wound to the thigh was "exactly perpendicular"; both had "a direction."

On redirect examination, the medical examiner agreed with the prosecutor that the chest wound "was slightly downward left to right." The prosecutor capitalized on this testimony during her closing argument. In an effort to undermine non-expert testimony placing Farnsworth low to the ground and below Decker immediately before the stabbing, she stated, "Here's [Decker's] chest, and it's a downward angle. You don't get that from being below someone. You get that from being at the same level, like the witnesses said, when they were both standing up, or both at the same level." She continued: "We have the direction of the wound showing that there is no way that [Farnsworth] was under [Decker] when he stabbed him in the chest because that could not—that would be an upward direction, not a downward direction."

At the postconviction-relief hearing, Farnsworth offered the report of a forensic pathologist who reviewed the medical examiner's autopsy report as well as other trial materials. After summarizing those materials, he opined, "The State was in error regarding its statements in closing. It is nearly impossible to infer relative positions of a victim and a person wielding a knife by virtue of directionality of a stab wound to the chest." The pathologist also opined "the left arm injury could have been sustained as Mr. Decker tried to block the stabbing knife that ultimately entered his chest," making him "the victim of only two stabbing thrusts rather than two stabbings and a separate slashing wound."

The postconviction court did "not read the report . . . to express any firm conclusions regarding the relative positions of Farnsworth and Decker at the time

the chest wound was inflicted." The court found the report did "not appear to shed much light on the relative positions of the combatants and would not have added much, if anything, to the evidence of justification [Farnsworth's trial attorney] was able to elicit from the witnesses for the State at trial." The court concluded Farnsworth failed to establish the breach of an essential duty or prejudice based on his trial attorney's failure to retain a forensic expert.

On appeal, Farnsworth argues his trial attorney opened the door to the medical examiner's "angle" testimony and the prosecutor's use of that testimony in her closing argument. He reprises his assertion that his trial attorney should have retained an expert pathologist to develop the following issues: "(1) What was the significance of the description of the fatal stab wound as 'downward'? (2) Were there 3 stabbing movements or just two?" In his view, "these issues were central to the defense of justification" and "went directly to whether [his] version of the fight was to be believed"—that he was actually underneath Decker and "threw the knife upwards" and "that the injury to the chest was actually a deflection."

Farnsworth relies on *Hernandez v. State*, No. 05-0051, 2005 WL 3115850, at *1 (Iowa Ct. App. Nov. 23, 2005). There, a defendant convicted of homicide by vehicle asserted that his trial attorney was ineffective in failing to "retain an expert toxicologist to examine the blood alcohol testing procedures followed by the State in testing [his] blood sample after money was set aside for that purpose." *Hernandez*, 2005 WL 3115850, at *1. The court of appeals agreed, concluding the defendant "was prejudiced." *Id.* at *4. The court stated that there was "a strong probability" an expert would have "called into doubt the validity of the State's" blood alcohol concentration test. *Id.*

This case is far different. The angle of the knife as it entered Decker was not "central to the defense of justification," as Farnsworth contends. Farnsworth concedes as much in connection with another argument—he correctly notes that the focus was on who started or continued the fight. The county attorney also did not believe "the angle" of the knife "was a huge issue." He "thought the bigger issue was who . . . approached who first and whether he . . . was able to stab the guy." And, as the postconviction court noted, the forensic pathologist had "no reason to question the autopsy findings and conclusions" and opined that "the determination of directionality of stab wounds often is somewhat subjective." As for the number of stab wounds, it matters little whether there were two or three; the key fact was that the stab wound to Decker's chest caused his death.

At the end of the day, whether to call an expert witness is a matter of trial strategy. *See Heaton v. State*, 420 N.W.2d 429, 432 (Iowa 1988). Farnsworth's trial attorney reasonably could have decided that an equivocal opinion such as the one given by the pathologist at the postconviction proceeding would have bolstered the state medical examiner's testimony and undermined the testimony of the non-expert witnesses who described Farnsworth's position relative to Decker's. *See Babcock v. State*, No. 19-1035, 2021 WL 603229, at *3–4 (Iowa Ct. App. Jan. 21, 2021) (stating defendant failed to show a defense expert "would have helped him in his murder trial"); *Dawson v. State*, No. 17-1679, 2019 WL 1940727, at *5 (Iowa Ct. App. May 1, 2019) (concluding defendant was not prejudiced by counsel's failure to call an expert pathologist to opine on how aggressive a fight was). On our de novo review, we agree with the district court that Farnsworth's attorney was not ineffective in failing to call an expert witness at trial.

## II.    *Failure to State Standard of Proof*

Farnsworth next contends his trial attorney "in his closing argument failed to mention the standard of proof" and this "omission has to be below the level of competent counsel." Farnsworth concedes he was unable "to find any case where counsel was declared ineffective for failing to mention or discuss the standard of proof, that is 'beyond a reasonable doubt.'" His concession together with a jury instruction on the applicable burden of proof are dispositive. Also telling is the jury's rejection of the State's case for first-degree murder, notwithstanding counsel's failure to mention the burden of proof. We agree with the postconviction court that Farnsworth failed to show counsel "breached any duty, let alone an essential duty" and did not show "he was prejudiced by the closing argument made by" counsel.

## III.    *Failure to Challenge Sufficiency of the Evidence on Justification*

Farnsworth argues his trial attorney was ineffective in failing to challenge "the sufficiency of the evidence that [he] [] initiated the fatal conflict either at trial or on appeal." But, as the State notes, his attorney did challenge the sufficiency of the evidence on this issue. Counsel stated:

> [T]he State has not proven, given that every witness that testified on behalf of the State, indicated that Ian Decker initiated the action, commenced the first blows. And that every witness produced by the State indicated that Mr. Farnsworth absorbed those blows and was below Mr. Decker. That the State has not proved, as they are required to do, that the defendant was not justified.

The trial court found there was "sufficient evidence to submit the case to a jury in regard to all of the elements and in regard to the defense." That there was. The court of appeals summarized the evidence in the prior opinion. *Farnsworth*,

2014 WL 2884732, at *1–2. The court pointed out Farnsworth punched his girlfriend at a bar after she received a text from her ex-boyfriend Decker, waited for her outside the bar, proceeded to an apartment where his girlfriend and others were headed, left the apartment but returned, and continued a fight initiated by Decker, that ultimately resulted in the stabbing. *Id.*

The jury reasonably could have found the State proved Farnsworth "continued the incident which resulted in injury or death," an element contained in the justification instruction. As the postconviction court stated, "Farnsworth had several opportunities to avoid the fatal fight with Decker but each time he made choices and took actions which continued the tension and ill will that was building up." On our de novo review, we conclude counsel could not have breached an essential duty because he raised a challenge to the sufficiency of the evidence supporting justification but, in any event, Farnsworth was not prejudiced. *See State v. Bowers*, No. 18-1827, 2020 WL 1310290, at *2 (Iowa Ct. App. Mar. 18, 2020) (concluding the defendant could not "show he was prejudiced by counsel's omission [of the justification defense] when moving for judgment of acquittal because the State presented ample evidence to counteract his justification defense"); *Weatherspoon v. State*, No. 03-0498, 2005 WL 723882, at *2 (Iowa Ct. App. Mar. 31, 2005) (finding no prejudice where "[t]he evidence overwhelmingly demonstrate[d] that even though [someone else] was the first aggressor, [the defendant] defended himself with an unreasonable amount of force, thereby negating any reliance on self-defense as justification for his actions").

## IV.     Other Ineffective-Assistance-of-Counsel Claims

Farnsworth argues "[t]here are many [other] instances where the performance of [trial counsel] dropped below the standard of reasonably competent counsel."  He specifically contends (A) counsel should never have taken the case because of his inexperience in handling felony jury trials and because of a claimed conflict of interest; (B) counsel did not move to sequester witnesses; (C) counsel failed to tell his client about a plea offer; (D) counsel failed to object when the prosecutor told the jurors they did not have to be unanimous on the justification defense; (E) counsel failed to properly question the state medical examiner; (F) counsel failed to refer to the downward angle of the fatal stab wound in closing argument; (G) counsel was ineffective on appeal; and (H) counsel mishandled the original bond conditions and failed to appeal the forfeiture provisions contained in the sentencing order.  He contends "[a]ll the claims of ineffective counsel cumulatively establish the necessary prejudice."

### A.     Inexperience of Counsel/Conflict of Interest

Farnsworth argues, "The breach of duty started when [counsel] took the case, a first degree murder case, that he was not competent to handle."  He cites the postconviction testimony of the attorney's legal assistant, who stated the attorney quoted a high retainer because he really did not want to take the case. The testimony provides little support for the inexperience claim given the legal assistant's concession that Farnsworth's attorney might have just had "a lot on [his] plate and this would be a lot more."

Farnsworth also cites evidence of his attorney's misappropriation of assets and other "misdeeds."  We agree with the postconviction court that Farnsworth

failed to tie those misdeeds to the representation in his case. Counsel's role in securing a verdict for the lesser offense of second-degree murder also weakens his claim of incompetence. We conclude counsel was not ineffective in taking Farnsworth's first-degree murder case.

We turn to the claimed conflict of interest. Farnsworth contends his attorney "should never have taken the case involving a serious crime in Mason City" because "[h]is firm represented the Mason City Police Department." Farnsworth was required to prove the firm's representation of the city posed an actual conflict of interest. *See State v. Watson*, 620 N.W.2d 233, 238 (Iowa 2000); *see also State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015) ("When neither the defendant nor his or her attorney raises the conflict of interest, the defendant is required to show an adverse effect on counsel's performance to warrant reversal, even if the trial court should have known about the conflict and failed to inquire."). He failed to make that showing. As the postconviction court stated:

> There is nothing in the record before the Court to show that [counsel] or his law firm ever represented any of the police officers whom the State called as trial witnesses against Farnsworth, whether in their individual capacity or as members of the Mason City Police Department, in any other lawsuits or legal matters. Further, there is nothing in the record in this case to show that any of the police officers whom the State called as trial witnesses against Farnsworth played any role or had any involvement in the cases where [counsel] or his law firm served as counsel for the City of Mason City.

*See Dewberry v. State*, No. 14-1198, 2015 WL 7567514, at *5 (Iowa Ct. App. Nov. 25, 2015).

### B.    Sequestering of Witnesses

"Courts have long recognized the practice of excluding witnesses as a means of preventing a witness from shaping his testimony to confirm with that of earlier witnesses." *State v. Sharkey*, 311 N.W.2d 68, 70 (Iowa 1981).  Farnsworth argues "[t]here was no order on the record requiring sequestering of witnesses."

The record on whether witnesses were sequestered was conflicting.  At the postconviction hearing, Farnsworth testified he "looked back . . . where all the people could sit . . . [and] saw some of the witnesses before they had testified."  His brother similarly testified to seeing witnesses in the courtroom before they testified.  The county attorney, in contrast, stated it was "standard protocol" to sequester witnesses and "we did that in this case."  The attorney who prosecuted the case similarly testified witnesses sat and waited in a different room and "would have to be brought in from that room."  She recalled discussing the issue with a witness and testified, "I know that they were sequestered because otherwise there would be no reason to keep [that witness] out."  The victim-witness coordinator testified, "[W]e made arrangements with the Sheriff's Department of where the witnesses would be stationed until they went into court to testify."  She said, "[W]e also spoke with them as far as not talking about the case or any testimony when they testified."

Even if a court could have found the testimony of Farnsworth and his brother more credible than the testimony of the State witnesses, the State correctly points to an absence of "proof that any of the State's witnesses changed their testimony or were otherwise influenced by anything someone else said in the courtroom."

Farnsworth failed to prove he was prejudiced by any failure to follow the sequestration protocols.

### C.    Plea Offer

Farnsworth contends his attorney "did not tell [him] about a plea offer." At the same time, he concedes his attorney told him the prosecutor would not offer anything less than second-degree murder and a plea of that nature would be unacceptable to Farnsworth or his family. In Farnsworth's words, "[I]t was nothing that we pursued after that."

The county attorney confirmed telling defense counsel "murder two was as low as [he] could go." In the prosecutor's words defense counsel responded, "[H]is client would not plead guilty to a murder two, so that pretty much ended discussions." Counsel could not have breached an essential duty in failing to convey a plea Farnsworth categorically ruled out. In any event, the jury returned a verdict for second-degree murder. Accordingly, Farnsworth could not establish he was prejudiced by any failure to convey any plea offer of second-degree murder.

### D.    Non-unanimous Jury in Deciding Justification Defense

Farnsworth argues his attorney "did not object when the prosecutor told the jury how they did not have to [be] unanimous [in deciding the justification defense]." But he also concedes, "In all likelihood, the statement by the Prosecutor to the jury during closing arguments regarding unanimity was a correct statement in the law." If the prosecutor's statement of the law was correct, Farnsworth's attorney could not have breached an essential duty in failing to challenge it.

### E. Cross-Examination

Farnsworth contends his attorney "was ineffective in his examination of" the state medical examiner by "allowing the evidence that the fatal wound occurred in a downward direction." We discussed the issue in Part I. We reiterate the angle of the knife as it entered the chest was of scant importance in establishing the cause of death. The key fact was the knife's penetration into Decker's heart. Farnsworth failed to establish he was prejudiced by his attorney's questioning of the medical examiner.

### F. Angle of Fatal Stab Wound

Farnsworth contends his attorney "was ineffective by failing to make any argument in closing regarding the downward angle of the fatal blow." We have already discussed the minimal relevance of the testimony. In addition, the jury received an instruction stating closing arguments were not evidence, a rule Farnsworth's attorney highlighted in his closing argument. He told the jury more than once not to accept the prosecutor's version of events. He highlighted Decker's role as "the aggressor"; Decker's "initiat[ion of] the contact"; Decker's act of "forc[ing] [Farnsworth] to the ground after striking him about the face and head"; and Decker's infliction of "multiple blows." He underscored the fact that "Farnsworth went to the ground" and "Decker was crouched above him before the stabbing took place." He summed up as follows: "[Farnsworth] on his knees, Ian Decker above him, he reacted. And as such, he's entitled [to] your consideration of self-defense." In short, counsel tackled the justification defense, asked the jury to discount the prosecutor's version, and succinctly summarized the facts supporting a finding of justification. Counsel did not breach an essential duty in

failing to counter the prosecutor's statements regarding the angle of the knife, and the omission was non-prejudicial.

### G.     Ineffective Appellate Counsel

Farnsworth contends counsel "was ineffective on appeal in quite a number of ways." He notes that counsel "messed up the combined certificate by identifying the appeal as from a guilty plea" and "failed to follow proper procedure" by omitting "the required section about preservation of error." As the State points out, "these delays in submitting the proof brief did not harm Farnsworth—his appeal continued through the adjudicatory process, including oral argument, a decision by the Court of Appeals, and denial of further review by the Supreme Court." Farnsworth failed to establish that he was prejudiced by counsel's omissions.

### H.     Mishandling of Appearance Bond

Farnsworth was "[h]eld for bond in the amount of: $100,000." A provision requiring cash bail was crossed out. Counsel made a request for bond review. Following a hearing, the district court amended the bail requirements to permit release from custody "only upon the posting of bond in the amount of $200,000 cash only," with "[a]t least $50,000 of this cash bond" to "be posted in" Farnsworth's name only. "The remainder (up to $150,000) of cash bond" could be "posted by surety." A $150,000 bond was posted by surety and Farnsworth deposited $50,000 cash in his name with the clerk of court. The $50,000 cash appearance bond contained language authorizing the clerk of court to use the "bail bond to "pay all fines, surcharges, [costs] and victim restitution that" may be ordered by the court. The $150,000 bond posted by the surety did not contain the same language.

After the jury found Farnsworth guilty, the sentencing order required him to pay $150,000 in pecuniary damages to Decker's heirs and $14,972 of restitution to the Crime Victim Assistance program. The court later released and exonerated the surety bond. The court expressed an intent to forfeit the $50,000 cash bond "for application toward victim restitution . . . [i]n the absence of a written objection by either party." Farnsworth's attorney lodged no objection and the court forfeited the bond. The restitution plan provided for $164,972 in restitution, applied the $50,000 cash bond to that sum, and stated $114,972 was "due."

Farnsworth contends his attorney mishandled his appearance bond. In his view, counsel should have left the original bond of $100,000 alone. As a result of his requested bond review, he argues the bond was doubled and Farnsworth was required to post $50,000. He also argues, "This was clearly intended to create a fund out of which statutory restitution could be paid in the event of the conviction." Farnsworth concedes his attorney "told the family this was illegal for restitution to be part of the consideration of bond" but argues he "did not do anything about it."

We need not address whether counsel breached an essential duty in seeking bond review. The operative omission with respect to the bond was counsel's failure to object to the court's application of the cash portion to Farnsworth's restitution obligation. *See State v. Letscher*, 888 N.W.2d 880, 885, 887 (Iowa 2016) ("No statutory sentencing provision exists in Iowa to authorize a court to forfeit bail. . . . The disposition of pretrial bail money is not an authorized part of sentencing, and therefore, a sentencing court is without statutory authority to forfeit bail as a part of a sentence. Action taken against bail must comply with the statutory terms and conditions."). Although the State correctly notes *Letscher*

postdated Farnsworth's posting of his bond and counsel had no duty "to foresee that result," counsel did not require *Letscher* to argue that no statutory authority supported the forfeiture of the cash bond for restitution. Indeed, statutory authority in effect at the time said precisely the opposite:

> Upon the filing of the undertaking and the certificate of the officer, or the certificate of the officer alone if money has been deposited instead of bail, *the court or clerk shall immediately order return of the money deposited to the person who deposited the same*, or order an exoneration of the surety.

Iowa Code § 811.8(2) (2015) (emphasis added). We conclude counsel had a duty to object to the district court's expressed intent to apply the cash bond amount to his outstanding restitution obligation. We further conclude Farnsworth was prejudiced by the omission, to the tune of $50,000. We "return the case to the district court for the clerk to disburse the bail money as required by law." *Letscher*, 888 N.W.2d at 886.

## V.  *Disposition*

We affirm the district court's denial of all the ineffective-assistance-of-counsel claims except the claim that Farnsworth's attorney should have objected to the intended forfeiture of the $50,000 cash bond. We reverse the denial of that claim and remand for return of that sum to Farnsworth.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**