# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1978

_____

Michael Terry Williams

*Petitioner - Appellant*

v.

Nick Ludwick, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: February 11, 2014
Filed: July 31, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

In 1998, an Iowa state jury convicted Michael Williams of first-degree murder, for which he was sentenced to life imprisonment without the possibility of parole. After exhausting direct and collateral appeals, Williams petitioned for habeas relief

in federal district court.[1] Williams alleged that conflicts of interests rendered his trial counsel ineffective and that his appellate counsel was ineffective for failing to pursue some of his conflict-of-interest claims. The district court denied relief. We affirm.

## I. *Background*

The Iowa Court of Appeals succinctly summarized the background facts as follows:

> In the late evening of July 26, 1998, three men entered the home of Bruce Vrchota in Mason City, Iowa. Vrchota's son, Shelley, was in the house at the time. The intruders were apparently looking for drugs and a cash box Vrchota kept on the premises. During the course of the incident, one of the men shot and killed Vrchota. In the early morning hours of July 27, 1998, Shelley gave a statement to the police and identified one of the men by the nickname "Sug." The Mason City Police knew the nickname "Sug" referred to Williams. Investigator Frank Stearns placed Williams's photograph in a photo array with five other men. Shelley identified Williams as one of the men who entered his father's home and the man who had brandished a gun during the robbery. Williams was arrested on July 28, 1998. His two codefendants were arrested shortly thereafter and tried separately.

> On August 6, 1998, the State charged Williams with first-degree murder and first-degree robbery. Trial commenced on March 2, 1999, and continued for nine days. The jury returned a verdict finding Williams guilty of first-degree murder and first-degree robbery. On April 2, 1998, the district court sentenced Williams to life in prison without the possibility of parole and ordered him to pay restitution in the amount of $150,000 to Vrchota's estate.

---

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

*State v. Williams*, Nos. 0-225, 99-0551, 2000 WL 1157832, *1 (Iowa Ct. App. Aug. 16, 2000) (unreported) ("*Williams I*").

On direct appeal, the Iowa Court of Appeals affirmed Williams's conviction but remanded to the Iowa district court for a hearing to determine whether certain romantic relationships among attorneys in the prosecutor's office and public defender's office created an actual conflict of interest that adversely affected his counsel's performance. Cerro Gordo County Public Defender's office represented Williams at trial. Assistant Public Defender Leslie Hult served as lead counsel, with supervising attorney Susan Flander as co-counsel. Katherine Evans worked in the Public Defender's office but did not participate in the case. The prosecutorial team included Assistant Attorney General Doug Hammerand and Assistant Cerro Gordo County Attorney Gregg Rosenbladt. Carlyle Dalen worked as an Assistant Cerro Gordo County Attorney but was not assigned to the case. During Williams's trial, Hult was engaged to Dalen and Evans was married to Rosenbladt. The state district court found that the relationships did not rise to an actual conflict of interest and that Williams waived any potential conflict. The Iowa Court of Appeals again affirmed the conviction. *State v. Williams*, 652 N.W.2d 844 (Iowa Ct. App. 2002) ("*Williams II*").

After his conviction, Williams applied for post-conviction relief in state court. Williams alleged he received ineffective assistance of both trial and appellate counsel. One member of Williams's trial defense team, Flander, simultaneously defended potential alibi witness Deanna Ackerman against a marijuana charge in a different case. Because of the potential conflict, Williams averred, his lead trial counsel, Hult, failed to call Ackerman to testify at his trial, depriving him of effective assistance of counsel. Williams also argued "that certain clients of Evans and/or Hult—Chris Morrill, Delona Webster, Vernon Moon, and Romie Williams—either had relevant information about the murder or actually testified for the prosecution at trial." *Williams v. State*, 771 N.W.2d 653, *4 (Iowa Ct. App. 2009) (unpublished)

("*Williams III*"). Finally, Williams contended that his appellate counsel, Maggi Moss, failed to seek further review of *Williams I*—a holding that he believed was so wrong that only a constitutionally ineffective lawyer would have allowed it to stand.

The Iowa Court of Appeals denied relief. The court noted that Ackerman's alleged alibi testimony conflicted with Williams's own testimony about his whereabouts at the time of the murder. The court therefore held "Flander's representation of Ackerman did not present an actual conflict" under applicable precedent. *Williams*, 771 N.W.2d at *3. With respect to Morrill, Webster, Moon, and Romie Williams the court found no actual conflict of interest. The court noted that the relevant testimony from both Morrill and Webster was inadmissible hearsay and incriminated Williams. With respect to Moon and Romie Williams, the court stated "Moon and Romie Williams did testify for the prosecution. However, Evans's representation of both of them had terminated before they became prosecution witnesses. Neither Moon nor Romie Williams were ever represented by Hult or Flander personally." *Id*. at *4. Consequently, neither Hult nor Flander were in any way constrained in their representation of Williams. Finally, the court concluded that it reached the correct decision in *Williams I*; therefore, Moss was not constitutionally ineffective for failing to appeal that decision. *Id*. at *4–5. The Iowa Supreme Court denied further review.

Williams then filed a 28 U.S.C. § 2254 petition with the federal district court. The court found that the Iowa Court of Appeals did not render a decision contrary to or involving an unreasonable application of clearly established federal law, nor did it reach a decision based on an unreasonable determination of the facts. The court found that "Flander's association with Ackerman did not affect Mr. Williams's representation or deprive him [o]f a viable alternate defense." The court found no evidence that the alleged conflicts with respect to Morrill, Webster, Moon, and Romie Williams in any way impacted Williams's defense. The court also found that Moss was not constitutionally ineffective for failing to appeal *Williams I* to the Iowa

Supreme Court. The court found that *Williams I* was not contrary to clearly established federal law, and that if counsel had appealed to the Iowa Supreme Court, it would have either declined to review or affirmed the decision. Finding no basis for relief, the court denied the petition.

The district court granted a certificate of appealability, permitting Williams to appeal the following issues: "whether [Williams's] trial attorney was ineffective regarding the alleged impermissible conflicts of interest, and whether his appellate attorneys were ineffective for failing to raise all his claims and for failing to pursue an appeal of the ruling of the Iowa Court of Appeals."

## II. *Discussion*

On appeal, Williams alleges that both trial and appellate counsel were ineffective. With respect to the alleged conflict arising from Hult's representation of Ackerman, Williams alleges that Ackerman could have been called to testify on his behalf, that some of her testimony "could have been a valuable alibi defense," and that "failure to inquire into potentially using Ackerman as an alibi witness affected the adequacy of representation." As a result, he contends, he is "entitled to a new trial with counsel that can independently investigate all potential witnesses to determine whether Ackerman should be called as an alibi witness." Williams alleges that "Moss failed to follow through with a request for further review based upon the 'automatic reversal' language of *Holloway v. Arkansas*, 435 U.S. 475, 488–89 (1978), and allowed the case to be sent back for a determination of 'actual conflict,'" which Williams contends was the wrong standard of review. Williams also avers that "Moss failed to present any information at the remand hearing about conflicts between potential witnesses such as Moon, Ackerman and [Michael] Graham."

"In a habeas proceeding, this Court reviews the district court's conclusions of law de novo and its factual findings for clear error." *Bobadilla v. Carlson*, 575 F.3d 785, 790 (8th Cir. 2009) (citation omitted). Under the Antiterrorism and Effective

Death Penalty Act, where a petitioner's claims have been "adjudicated on the merits in State court proceedings," we may grant relief only where the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Ineffective-assistance-of-counsel claims, whether pertaining to trial counsel or appellate counsel, are governed by the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984).[2] Under *Strickland*, a petitioner claiming that his trial counsel was constitutionally ineffective "must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 688, 694). To demonstrate that appellate counsel was ineffective, a petitioner "must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Robbins*, 528 U.S. at 285 (citation omitted). He must then "show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. *Id.* (citation omitted).

---

[2]*See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to ineffective assistance of appellate counsel claims).

The Supreme Court identified an exception to the "general rule" of *Strickland*: "where assistance of counsel has been denied entirely or during a critical stage of the proceeding," prejudice is presumed. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). Counsel is ineffective where "the defendant's attorney actively represented conflicting interests." *Id*. Where the trial court forces defense counsel "to represent codefendants over his timely objection" without determining that no conflict of interest exists, reversal is automatic. *Id*. at 167–68 (citing *Holloway*, 435 U.S. at 488). "[A]bsent objection, a defendant must demonstrate that 'a conflict of interest actually affected the adequacy of his representation.'" *Id*. at 168 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). A defendant who makes such a showing "need not demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349–50. (citation omitted) "[W]e have expressly refrained from deciding whether the lowered burden in establishing prejudice applies to actual conflicts of interest which did not arise out of multiple representation." *Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013) (citations omitted).

Mere *possible* conflict is not sufficient to trigger *Cuyler*'s lower burden; "a defendant must establish that an *actual* conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350 (emphasis added). "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id*. (citation omitted).

> To prove a conflict produced an adverse effect [under *Cuyler*], a defendant must identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Morelos*, 709 F.3d at 1252 (citations and quotation omitted).

Assuming without deciding that *Cuyler* applies to conflicts of interest not arising out of multiple representation, we hold that Williams has not demonstrated that he is entitled to relief. With respect to the alleged Hult/Ackerman conflict, Williams has identified a plausible alternative strategy that his counsel could have pursued: solicit alibi testimony from Ackerman. Unfortunately, the Iowa Court of Appeals found that Ackerman's proposed alibi testimony conflicted with that of both Williams and his wife. The decision *not* to solicit testimony contrary to that of one's client is a sound defense strategy. Hult's decision not to call Ackerman was prudent and reasonable and advanced no interest of Ackerman in conflict with Williams. Williams has not demonstrated that calling Ackerman to testify would have been "objectively reasonable under the facts of the case," and therefore has not established that the conflict "adversely affected" the representation that he received.[3] As a result, Williams is not entitled to relief due to ineffective assistance of trial counsel.

Similarly, Williams has not established that appellate counsel was ineffective. Williams asserts that *Williams I* conflicted with the "automatic reversal" language in *Holloway*. However, *Holloway* entitles a defendant to "automatic reversal" of a conviction "where defense counsel is forced to represent codefendants over his timely objection." *Mickens*, 535 U.S. at 168. Because neither Williams nor his counsel objected to any conflict of interest in this case, nor did counsel represent codefendants, *Holloway* is inapposite. Counsel was therefore not ineffective for failing to appeal *Williams I* to the Iowa Supreme Court on the basis of *Holloway*.

Nor was appellate counsel ineffective for failing to present evidence of the Webster or Moon conflicts on remand to the state district court. Only the potential

---

[3]Williams did not raise the alleged Morrill or Romie Williams conflicts on appeal. Williams presents nothing more than the bare assertion that "Williams's attorneys could not effectively investigate state witnesses Vernon Moon and Delona Webster, since they were also represented by the same Cerro Gordo Public Defenders Office." We find no merit to his unsubstantiated claim.

conflicts relating to the Hult/Dalen and Evans/Rosenblandt relationships were addressed by the Iowa Court of Appeals. The scope of remand was explicitly limited to those potential conflicts. Counsel did not provide ineffective assistance by failing to press arguments outside the scope of remand.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

———————————————