# IN THE COURT OF APPEALS OF IOWA

No. 17-0413
Filed February 21, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**KOHLVIDAS BRYANT LEE,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley,

Judge.

A defendant appeals his convictions, challenging the sufficiency of the

evidence and asserting trial counsel had a conflict of interest.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.

Considered by Vogel, P.J., Mullins, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**SCOTT, Senior Judge.**

Kohlvidas Lee appeals his convictions for domestic abuse assault causing bodily injury, willful injury causing bodily injury, and child endangerment, in violation of Iowa Code sections 708.2A(1), 708.2A(3)(b), 708.4(2), 726.6(1)(a), and 726.6(7) (2016).  On appeal, he asserts there is insufficient evidence to prove he was a household member as is necessary to establish both domestic abuse assault and child endangerment.  He also claims the evidence was insufficient to prove he knowingly created a substantial risk to the minor's physical, mental, or emotional health, which is necessary for the child-endangerment conviction.  Finally, he claims he should be granted a new trial because counsel made himself an unsworn necessary witness when he conducted a phone conversation with the complainant in this case.  Because we conclude the evidence was sufficient and Lee did not prove counsel's conflict of interest adversely affected counsel's performance, we affirm.

**I.  Sufficiency of the Evidence.**

We review Lee's challenge to the sufficiency of the evidence for correction of errors at law.  *State v. Ortiz*, 905 N.W.2d 174, 179 (Iowa 2017).

> We view the evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence."  *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017) (quoting *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012)).  We uphold the verdict if substantial evidence in the record supports it.  *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013).  "Evidence is . . . substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *Id.* (quoting *Sanford*, 814 N.W.2d at 615).

*Ortiz*, 905 N.W.2d at 180.

Lee challenges both his convictions for domestic abuse assault and child endangerment as lacking substantial evidence.[1]

**A. Household Member.** One of the ways for an assault to become a domestic abuse assault is for the assault to take place "between family or household members who resided together at the time of the assault." *See* Iowa Code § 232.6(2)(a). In addition, to be guilty of child endangerment, a person must be the "parent, guardian, or person having custody or control over a child . . . or a person who is a member of the household in which a child or such a minor resides." *See Id.* § 726.6(1). There is no allegation that Lee was a family member or that he was a parent, guardian, or person who had custody and control over the child, so both convictions rest on Lee's status as a "household member."

Iowa Code § 236.2(4)(a) defines "family or household members" for the purpose of the domestic abuse chapter to mean "spouses, persons cohabiting, parents, or other persons related by consanguinity or affinity." In *State v. Kellogg*, the supreme court developed a nonexclusive lists of factors to help determine whether parties were "cohabiting," which includes:

> 1. Sexual relations between the parties while sharing the same living quarters.
> 2. Sharing of income or expenses.
> 3. Joint use or ownership of property.
> 4. Whether the parties hold themselves out as husband and wife.
> 5. The continuity of the relationship.
> 6. The length of the relationship.

---

[1] Lee does not specifically challenge the evidence supporting his conviction for willful injury.

542 N.W.2d 514, 518 (Iowa 1996) (quoting *People v. Holifield*, 252 Cal. Rptr. 729, 731 (Cal. Ct. App. 1988)); *see also State v. Mitchell*, 757 N.W.2d 431, 438 (Iowa 2008) (applying *Kellogg* factors in a child endangerment case to determine whether mother was cohabiting with a sex offender). The jury was instructed on these factors,[2] and Lee contests the sufficiency of the evidence to support them.

The complaining witness in this case testified she met Lee through mutual friends in January 2016 and was initially friends with Lee, but soon after meeting, the two began a dating relationship. Not long after they started dating, Lee "moved in" with her and her three children. Officer Dane Cox testified to his investigation of the incident and stated the complaining witness told him she had been dating Lee for several months and Lee would stay at her house five nights out of the week. However, Lee would get his mail at another address. Officer Cox did not go into the bedrooms of the house in order to determine whether Lee's belongings were present. Another officer, Corporal Stan Ryan, was able to determine by reviewing prior police contacts that Lee and the complaining witness had a relationship. In addition, the complaining witness left her children in Lee's care, including leaving her one-year-old child with Lee the morning following the assault.

---

[2] The jury instruction given in this case that related to "family or household members" stated:

> [T]he law defines "family or household members" as persons cohabiting with each other.
>
> "Cohabiting" does not require a sexual relationship but does require more than dwelling or living together in the same place. To determine if the Defendant and [complaining witness] were cohabiting at the time of the alleged offense, you may consider whether they had sexual relations while sharing the same living quarters; they shared income or expenses; they jointly used or owned property together; they held themselves out as husband and wife; the continuity and length of their relationship; and any other facts shown by the evidence bearing on their relationship with each other.

Based on this testimony and the inferences the jury could have drawn from this testimony, we conclude the evidence was sufficient to generate a jury question on whether Lee was cohabiting with the complaining witness and her children on the day of the incident. *See State v. Virgil*, 895 N.W.2d 873, 883 (Iowa 2017) ("While there was sufficient evidence to find [the defendant and the complaining witness] cohabited, there was also evidence from which a jury could have concluded otherwise."); *State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the jury to judge the credibility of the witnesses and weigh the evidence."). We therefore affirm Lee's convictions on this ground.

**B. Knowingly Create Substantial Risk.** The jury was instructed to find Lee guilty of child endangerment, it had to find:

> 1. On or about September 2, 2016, the defendant was a person who is the parent, guardian, or person having custody or control of [the child], or was a person who is a member of the household in which [the child] resides.
> 2. [The child] was under the age of 14 years.
> 3. The defendant acted with knowledge that his actions were creating a substantial risk to [the child's] mental, physical, or emotional health or safety.

Lee challenges the final element. He claims the evidence does not show his actions created a substantial risk to the child's physical, mental, or emotional health or safety, or that he knew his actions would create any such risk. The jury was provided an instruction defining knowledge: "For the defendant to know or have knowledge of something means he had a conscious awareness that his actions were creating a substantial risk to one's mental, physical, or emotional health or safety."

The supreme court has defined substantial risk to the child's health or safety as "[t]he very real possibility of danger to a child's physical health or safety." *State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001). "It does not require proof that the conduct was negligent or reckless, although such actions may create a substantial risk. . . . [I]t [is] unnecessary to prove that the physical risk to a child's health or safety is likely. Rather a showing that the risk is real or articulable will suffice." *Id.* at 232–33.

The complaining witness told investigators that when she arrived home the night of the assault, Lee "kicked the babysitters out" of the house and began yelling at her. Her five-year-old child was asleep in the bedroom upstairs, and the complaining witness testified Lee was aware of the child's location. While she testified she blacked out during some of the assault, she estimated the assault lasted "a really long time," "for an hour or two." The five-year-old woke up and witnessed what was happening. The complaining witness testified she believed her screams and cries for help woke the child. The complaining witness remembered the child saying, "Leave mommy alone" and "trying to grab [her] and like jumped onto [her]." The complaining witness testified that Lee "tried to just describ[e] the situation, 'Oh, mommy and me got in a fight, and clean her off.'" The child then took the complaining witness to the bathroom, and used a washcloth to clean the blood off her face and arms. The complaining witness further testified that her five-year-old child "is terrified of a lot of things now, men in general. [The child] doesn't trust anybody, or, um, [the child is] still in counseling over it."

Lee asserts the evidence is lacking in expert testimony, who would have testified regarding the impact Lee's actions may have had on the child's mental or

emotional health. Absent this testimony, he asserts any evidence his actions created a substantial risk to the child's mental or emotional health is speculative at best. He also asserts there is no indication Lee was aware of the child's presence before the child came into the room.

The jury was instructed to "[c]onsider the evidence using your observations, common sense, and experience." The complaining witness testified Lee kicked the babysitters out upon her arrival at home, so it is reasonable to conclude that Lee was aware of the complaining witness's children's presence in the home. It is also common sense that a violent altercation will cause noise that would wake a sleeping child. The complaining witness testified the child told Lee to "[l]eave mommy alone," so it is reasonable to assume the child saw and heard at least some of the assault. Even without expert testimony, it is also reasonable for the jury to conclude there is a "real or articulable" risk or a "very real possibility of danger" to a child's mental, physical, or emotional health or safety from witnessing the child's mother assaulted. *See State v. Schneider*, No. 14-1113, 2015 WL 2394127, at *3 (Iowa Ct. App. May 20, 2015) ("Jurors are not asked to check their common sense at the courthouse doors."). Viewing the evidence in the light most favorable to the State, including all reasonable inferences to be drawn from the evidence, we conclude the evidence was sufficient to support the third element of child endangerment, and we affirm that conviction.

## II. Unsworn Necessary Witness.

Finally, Lee asserts he is entitled to a new trial because his trial counsel made himself an unsworn necessary witness when he conducted a private phone conversation with the complaining witness and then used that phone conversation to cross-examine the complaining witness. Lee contends counsel created an actual conflict of interest or a serious potential for a conflict of interest, which was evident during the cross-examination. He claims the trial court should have conducted an inquiry into the conflict and the failure to do so deprived him of his constitutional right to counsel.

In support of his claim, Lee cites the case of *State v. Vanover*, 559 N.W.2d 618, 629–31 (Iowa 1997), where the supreme court affirmed the district court's decision to disqualify defense counsel after defense counsel obtained a confession from a codefendant that also exculpated his client. In affirming the district court's decision to disqualify defense counsel, the court noted the then Iowa Code of Professional Responsibility for Lawyers[3] required an attorney to withdraw from a case when the attorney knows, or should know, that the attorney may be called as a witness in a case. 559 N.W.2d at 629. The court noted the conflict is not typically what we understand to be a conflict of interest where a lawyer may have divided

---

[3] The current rule regarding an advocate potentially acting as a witness in the Iowa Rules of Professional Conduct states, in part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Iowa R. of Prof'l Conduct 32:3.7.

loyalties between multiple clients, but a conflict where "counsel has been placed in the position of having to worry about allegations of his own misconduct." *Id.* at 631 (quoting *United States v. Arrington*, 867 F.2d 122, 129 (2d Cir.1989)).

Even if the attorney will not be called as a witness, the *Vanover* court noted the attorney would be acting as "an unsworn witness" because the attorney has "first-hand knowledge of events presented at trial." *Id.* at 632. Disqualification of the attorney is warranted in such a case for two reasons. *Id.* at 633.

> First, counsel may be "constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client." Second, counsel's role "as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination."

*Id.* (quoting *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993)).

The *Locascio* court explained that when an attorney is an unsworn witness the detriment is to the government and the court because "the defendant gains an unfair advantage" and "the factfinding process is impaired." 6 F.3d at 934. "Waiver [of that conflict] by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced." *Id.*; *see also United States v. McKeon*, 738 F.2d 26, 35 (2d Cir. 1984) ("If counsel were to cross-examine the witness as to her conversations with him, argue the credibility of her testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue.").

In this case, during cross-examination when defense counsel was questioning the complaining witness about the changes she made to her story, the following exchange took place:

> Q. In your first deposition, you also talked about calling me, correct? A. Yes.
> Q. And you called me, at my office, a couple weeks after this incident? A. Yes.
> Q. You had reached out to me, I hadn't reached out to you, had I? A. Kohlvidas had asked me to call you.
> Q. But—but you reached out to me? A. I did reach out to you, yes.
> Q. And you explained to me that Kohlvidas did not assault you? A. Yes.
> Q. You said you were assaulted by these women? A. I didn't tell you that. I said that I wasn't going to testify to anything like that, I just wanted it all to go away. I didn't want to deal with it, at that point.
> Q. Well, you told me that you had lied to the police, when you said Kohlvidas assaulted you, didn't you? A. I don't recall telling you that.

There was no objection or motion to disqualify the defense counsel made during trial. Lee asserts this is not fatal to his claim because the court should have sua sponte inquired regarding the conflict and should have disqualified his attorney.

In *State v. Watson*, our supreme court noted "[a] trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it 'knows or reasonably should know that a particular conflict exists.'" 620 N.W.2d 233, 238 (Iowa 2000). Thus, when a conflict of interest claim is raised for the first time on appeal, the claim must be addressed in one of three ways:

> If an actual conflict existed and the trial court knew or should have known of the conflict, yet failed to make inquiry, reversal is required. If the record on appeal shows only the possibility of a conflict, then the case must be remanded for a determination as to whether an actual conflict existed and/or whether the defendant made a valid waiver of his right to independent counsel. If, on remand, an actual conflict is found, prejudice is presumed and reversal is mandated. If

there is no indication that the trial court knew or should have known of an actual conflict, and defendant made no objection to his representation, then the defendant, in order to obtain a reversal on appeal, must prove that his counsel rendered ineffective assistance by proving that an actual conflict adversely affected counsel's performance.

*Id.* (citations omitted).

Lee asserts his case falls under the first prong requiring automatic reversal because the court knew or should have known of the conflict based on defense counsel's cross-examination of the complaining witness. We disagree. As noted above, this type of conflict is not a typical conflict of interest where counsel represents different clients with competing interests. *See Vanover*, 559 N.W.2d at 629. We conclude this particular conflict, between defense counsel's credibility as an unsworn witness and counsel's role as an advocate, is not one that the trial court "knew or should have known" based on the limited cross-examination that took place regarding defense counsel's phone conversation with the complaining witness. Thus, we conclude, to warrant a new trial, Lee must show the conflict "adversely affected counsel's performance." *Watson*, 620 N.W.2d at 238.

When defense counsel acts as an unsworn witness, it is the State that suffers a disadvantage. *Locascio*, 6 F.3d at 934. In such a situation, the defense actually gains an advantage because the defense attorney here could "subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination." *Id.* at 933. There is no claim that counsel was "constrained from making certain arguments" on Lee's behalf because of counsel's involvement or any evidence counsel attempted "to minimize his own conduct at the expense of" Lee. *See Vanover*, 559 N.W.2d at 633 (quoting

*Locascio*, 6 F.3d at 933). Counsel vigorously cross-examined the complaining witness concerning the phone conversation at issue and brought out all of the other times the complaining witness made inconsistent statements regarding who caused her injuries. Upon our review of the record, we fail to find evidence that defense counsel's conflict of acting as an unsworn witness adversely affected defense counsel's performance or prejudiced Lee. Therefore, we deny Lee's request for a new trial.

Because sufficient evidence supports the jury's guilty verdicts for domestic abuse assault causing bodily injury and child endangerment and because Lee cannot demonstrate prejudice based on his claim his defense counsel acted as an unsworn necessary witness, we affirm.

**AFFIRMED.**