# IN THE COURT OF APPEALS OF IOWA

No. 22-0551
Filed November 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STEPHEN DEVON PHILLIPS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

The defendant appeals his conviction for first-degree murder.  **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Heard by Tabor, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

Stephen Phillips appeals his conviction for first-degree murder, arguing (1) the verdict was not supported by substantial evidence; (2) the trial judge should have recused from his case; (3) his attorney had a conflict of interest; and (4) the court erred in allowing evidence of his subsequent bad acts and excluding evidence from the victim's car. We find overwhelming proof supports the verdict; the court did not abuse its discretion in declining to recuse from the case or to remove counsel; and Phillips cannot show prejudice from the evidentiary rulings. We thus affirm his conviction.

**I. Facts and Prior Proceedings**

*Evidence presented to jury.* One evening in May 2020, friends were hanging out at Andrew Flowers's house on Crescent Place in Waterloo. The group included Phillips and Andrew's brother, Terrell Flowers.[1] At one point, Phillips and Terrell started "tussling" on the couch. Terrell took Phillips to the ground. Andrew's girlfriend testified Terrell was holding Phillips by the neck.

Andrew broke up the fight, pulling Terrell off Phillips and telling Phillips to leave. Before leaving, Phillips made threats, first telling Andrew: "You and your baby mama better leave the house cuz I'm gonna shoot it up." Once outside, Phillips added, "everybody better get out" because he would "come back and shoot the house up." After he left, Phillips texted Terrell, "u played with Steve u fina die."[2]

---

[1] Because we refer to two Flowers brothers, we use their first names.
[2] Phillips testified "Steve" referred not to himself but to his uncle, who recently died, and he felt Terrell showing disrespect to that uncle.

Phillips returned to the Crescent Place house about twenty-five minutes later, leaving his Buick running at the curb. Phillips knocked on the door, and Terrell answered. Once inside, Phillips started yelling at Terrell, who told him to calm down. As the argument heated up, both men pulled out their guns. A few minutes later, Terrell was the first to holster his gun, thinking the situation had calmed down. But it hadn't. Phillips took that chance to shoot Terrell in the chest. Terrell fell to the floor. And Phillips fled from the house. Andrew grabbed Terrell's gun from the holster on his hip and ran after Phillips. As Phillips drove off in his Buick, Andrew "let off a shot at him."

Although his friends rushed Terrell to the hospital, he died from severe blood loss around his heart. The medical examiner later documented two gunshot wounds, one to Terrell's right forearm and one to his right chest.

Meanwhile, Phillips drove to the home of his friend L.Y.-F. on Linwood Avenue.[3] On the way there, he called L.Y.-F. and left a voicemail that continued to record their interaction. When Phillips arrived at the Linwood Avenue house, he pointed a gun at L.Y.-F.'s head, demanding, "[G]ive me some money, give me something, I got to go" or else "I will pop your ass like I popped Rello," a nickname for Terrell.

J.W. was visiting L.Y.-F.'s house. Because she was making a quick stop, she left her keys in her Honda Accord in the driveway. She heard an argument outside and saw Phillips pointing a gun at L.Y.-F.'s head. She recalled that Phillips

---

[3] In deciding Phillips's appeal from the robbery involving these victims, we used their initials. *State v. Phillips*, No. 21-1783, 2023 WL 5948999, at *1 (Iowa Ct. App. Sept. 13, 2023). To be consistent, we will continue to do so here.

told L.Y.-F. to empty his pockets. L.Y.-F. handed over his wallet and other items. Phillips then took off in J.W.'s Honda Accord.

A few hours later, police caught up with Phillips at a Motel 6 parking lot. He was still driving the Honda Accord. When officers confronted him, Phillips ran into the motel, tripped, and tossed away a handgun. During his police interview, Phillips denied having the handgun and blamed someone else for the shooting at the Crescent Place house.

After police gathered sufficient evidence, the State charged Phillips with murder in the first degree, in violation of Iowa Code section 707.2(1)(A) (2020), and first-degree robbery for the Linwood Avenue events. The cases were bifurcated, and Phillips was convicted of the robbery before this murder case went to trial. At his murder trial, Phillips testified that when he first left the Crescent Place house, he and Terrell had just been "talking shit" and neither was serious or angry. He denied "tussling" with Terrell. Phillips claimed that only when he returned did Terrell get "serious"—pushing and strangling him. He claimed that Terrell was pointing a gun at him, so he pulled his gun and shot Terrell in the arm. Phillips testified, "I wasn't trying to kill him or nothing like that." He also told the jury, "I was scared. I've been shot before. . . . I wasn't going to let him shoot me." Phillips said he fled and lied to law enforcement because he was scared.

*Pretrial rulings.* About ten days before trial, Phillips asked the presiding judge to recuse, citing three reasons: (1) she had presided over his robbery trial and sentencing; (2) she was married to a Waterloo police officer, and (3) she was not specially assigned to the case. After a hearing, the court denied Phillips's recusal motion.

About one week before trial, Phillips moved in limine to exclude evidence of the robbery at Linwood Avenue, arguing his subsequent bad acts were irrelevant and unfairly prejudicial. The court denied the motion but ordered both parties to refrain from using the term "robbery" or mentioning the earlier trial.

The first morning of testimony, defense counsel Matthew Hoffey informed the court he had represented J.W., whom the State planned to call as a witness, but that he was no longer representing her. He asserted that J.W. would waive the conflict. But Hoffey asked for more time to discuss the conflict with Phillips. A few days later, Phillips also waived the conflict in writing.

*During and after trial.* While cross-examining a State's witness, defense counsel asked about guns and other items discovered in Terrell's car. The State objected. The district court ruled that evidence wasn't relevant.

After six days of testimony, the jury found Phillips guilty as charged, and the court sentenced him to life in prison without parole. Phillips appealed, and his case was heard in oral argument before our court.

## II. Analysis

### A. Sufficiency of the Evidence

Phillips first contends there was insufficient evidence to support the jury's verdict. We review that claim for the correction of legal error. *See State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider whether, when taken in the light most favorable to the State, the verdict was supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact that Phillips is guilty beyond a reasonable doubt. *See id.* We consider all

reasonable inferences that may fairly be drawn from the evidence. *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017).

To convict Phillips of first-degree murder, the jury had to find

> 1. On or about the 15th day of May, 2020, the defendant shot Terrell Flowers.
> 2. Terrell Flowers died as a result of being shot.
> 3. The defendant acted with malice aforethought.
> 4. The defendant acted willfully, deliberately, with premeditation, and with specific intent to kill Terrell Flowers.
> 5. The defendant acted without justification.

Phillips challenges only the justification finding. The court gave this jury instruction on justification:

> The defendant was justified in using reasonable force if he reasonably believed that such force was necessary to defend himself or another from any actual or imminent use of unlawful force that he reasonably believed was being or would be imminently perpetrated by Terrell Flowers.
> Reasonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent death or injury. If in the defendant's mind the danger was actual, real, imminent, or unavoidable, even if the defendant was wrong in estimating it or the force necessary to repel it, the force was justified if the defendant had a reasonable basis for his belief and responded reasonably to that belief.
> It is not necessary that there was actual danger, but the defendant must have acted in an honest and sincere belief that the danger actually existed. Apparent danger with the defendant's knowledge that no real danger existed is no excuse for using force.

On top of that definition, the court instructed the jury that "[a] person who is engaged in illegal activity has a duty to retreat before using force." And that Phillips was not justified if any of the following were true:

> 1. The defendant did not have a reasonable belief that it was necessary to use force to prevent an injury or loss.
> 2. The defendant used unreasonable force under the circumstances.
> 3. The defendant was engaged in illegal activity as explained in Instruction Nos. 49 & 50 in the place where he used force, he made

no effort to retreat, and retreat was a reasonable alternative to using force.

Instruction No. 49 stated Phillips committed the offense of carrying a pistol if he "knowingly carried or transported a pistol in a vehicle" and the "pistol was loaded." It also provided that Phillips committed possession of a firearm by a prohibited person if he "knowingly possessed, received, transported, or caused to be transported a firearm" and he was "subject to a no-contact order." And Instruction No. 50 provided Phillips committed the offense of going armed if he "was armed with a loaded firearm" and was "within the city limits of Waterloo."

We find more than sufficient evidence to conclude Phillips shot Terrell without justification.[4] The jury could have reasonably decided that Phillips was not justified in shooting Terrell because Phillips was acting illegally by going armed with a loaded handgun.[5] Substantial evidence shows that Phillips—who was prohibited from carrying weapons—returned to the Crescent Place house armed with a loaded handgun and the address was within Waterloo. Witnesses testified that Phillips pulled his gun first, then Terrell. But Terrell put his gun away, at which point Phillips reasonably could have retreated.[6] Instead, Phillips shot Terrell while

---

[4] We may affirm if evidence supporting any theory can sustain the verdict. *See* Iowa Code § 814.28.

[5] A sheriff's deputy testified that in January 2020 he served paperwork on Phillips and informed him that he was prohibited from carrying weapons.

[6] Phillips testified Terrell was still pointing a handgun at him when Phillips fired, but several witnesses said Terrell had holstered his weapon. And Andrew testified he pulled Terrell's gun out of its holster on his hip to chase Phillips. The jury was entitled to determine what testimony was credible. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (noting the jury may believe or disbelieve the evidence and give weight to the evidence as it sees fit).

Terrell's gun was holstered. On this record, the jury could reasonably find Phillips was not justified.

Plus, Phillips's earlier conduct bolsters the jury's conclusion that he was not acting on a reasonable belief that deadly force was necessary to defend himself against Terrell. Witnesses at the Crescent Place house testified Phillips and Terrell were arguing. Granted, their recollections vary as to how serious the argument was. But most recalled that before Phillips left, he threatened to "shoot the house up." Witnesses did not see Phillips with a gun before he left, but he returned with a gun, so it is reasonable to infer that he retrieved the gun to make good on his threats. While Phillips was gone, he texted Terrell another death threat. Phillips could have stayed away but chose to return armed—even knowing Terrell was always armed.[7] On his return, Phillips drew his gun first. Terrell drew his weapon too, but put it away first. That's when Phillips fired the fatal shot. On this record, the jury could conclude that Phillips started the confrontation by issuing threats and continued the clash by returning armed. *See State v. Fordyce*, 940 N.W.2d 419, 426 (Iowa 2020). Substantial evidence supports the verdict.

### B. Motion to Recuse Trial Judge

Phillips next contends that the trial judge should have recused herself (1) because she presided over the robbery trial, (2) because her spouse was a Waterloo police officer, and (3) because she was not specially assigned to the case. On appeal, he adds a fourth, overarching ground that the judge "appeared to be taking a personal interest in the outcome of the recusal motion." We review

---

[7] All the eyewitnesses testified to this common knowledge, including Phillips.

a district court's recusal decision for an abuse of discretion. *State v. Trane*, 984 N.W.2d 429, 433 (Iowa 2023). Abuse of discretion occurs when the decision is based on untenable grounds or the court has acted unreasonably. *Id.* at 434.

The Iowa Code of Judicial Conduct sets out standards for recusal.[8] Under those rules, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Iowa Code of Judicial Conduct R. 51:2.11(A). Impartiality is the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Iowa Code of Judicial Conduct, Terminology. The party seeking recusal bears the burden to show actual prejudice; speculation is not enough. *State v. Biddle*, 652 N.W.2d 191, 198 (Iowa 2002). "The test is 'whether reasonable persons with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned.'" *Carter v. Carter*, 957 N.W.2d 623, 644 (Iowa 2021) (quoting *State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994)). And that "alleged bias and prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case." *State v. Bear*, 452 N.W.2d 430, 435 (Iowa 1990).

Beginning with the first ground, the judge presiding over the murder trial also presided over Phillips's robbery trial and sentencing.[9] But that situation was

---

[8] "Recusal" is a synonym of "disqualification." *Taylor v. State*, 632 N.W.2d 891, 896 (Iowa 2001).

[9] At the recusal hearing, counsel for Phillips argued that at the robbery sentencing, the judge considered unproven factual allegations when imposing the maximum allowable punishment. On appeal, Phillips does not renew that argument.

not a basis for recusal. *Id.* Evidence presented in a prior cause does not create a personal bias because it does not stem from an extrajudicial source. *State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976). Phillips cannot show that the trial judge acquired bias from exposure to information outside a judicial setting.

Second, Phillips contends the judge should have recused herself because she is married to a Waterloo police officer and that department investigated the robbery and murder. In his motion, Phillips did not allege that the judge's husband participated in the investigation. Rather, according to Phillips, the husband's assignment as an internal affairs officer meant that he held a "supervisory position over all officers employed" in the department. But Phillips produced no evidence to support that allegation. And he showed no evidence that the trial judge was partial to any officer witness or investigator in the case because of her husband's position.[10] Phillips falls short of his obligation to prove actual prejudice.

Third, Phillips notes that the judge was not specially assigned to his case by the chief judge of the district until after his January 2022 recusal motion. Two days later, the chief judge issued the special assignment, dating it retroactive to March 20, 2021, and blaming the delay on a "scrivener's error." The source of that error is unclear. But nowhere in his motion nor in his appellant's brief does Phillips explain why the lack of a special assignment would be grounds for recusal. The court's order stated, "[S]pecial assignment is being made to promote judicial

---

[10] At the hearing, counsel speculated that police officers and their families are "close-knit" and it was "very likely that this court personally knows some, if not all, of the Waterloo police officers." But we cannot find that "the judge's family relationships with police officers, in and of themselves, created an appearance of judicial bias warranting recusal." *See York v. United States*, 785 A.2d 651, 656 (D.C. 2001).

efficiency." The belated assignment would not cause a reasonable person to question the trial judge's impartiality.

Finally, for the first time on appeal, Phillips expresses concerns about the vehemence of the judge's "defense" of herself at the recusal hearing.[11] He argues she took "umbrage" at grounds in the motion and had a "personal interest" in its outcome.[12] Bypassing the State's concern for error preservation, we find the court's statements in ruling on the motion were not separate grounds for recusal.

Phillips cites authority from Georgia finding a judge's defense of himself in a recusal motion created the appearance of partiality. *See Isaacs v. State*, 355 S.E.2d 644, 645 (Ga. 1987) (per curiam). He asks us to reach the same conclusion. But we are not persuaded to do so on such different facts. In that case, criminal defendants asked the trial judge to recuse. *Id.* That trial judge retained counsel and tried to participate as a party at the recusal proceedings before another judge. *Id.* The Georgia Supreme Court found this "adversarial posture" could create "antipathy" between the judge and the criminal defendants

---

[11] At the start of the hearing, the court noted the motion's signature block was not signed. It contained only "/s/" and the attorneys' names underneath. At the time of the trial, Iowa Rule of Criminal Procedure 2.11(9) required a motion for change of judge to be "verified on information and belief by the movant." We note that "[r]eferences to the motion of change of judge have been deleted from revised rule 2.11 because they have been superseded by other sources of law relating to recusal and disqualification." Iowa. R. Crim. P. 2.11(4) cmt.

[12] At the motion hearing, the judge observed that "the parts highlighted today during the hearing don't necessarily mirror what the motion says." She was concerned that the allegations made were unfounded and yet were available for public view. And she disputed that she imposed the robbery sentence on unproven facts. She identified the argument about her husband as "cut-and-pasted" from a different case and pointed out that recusal is necessary only if the officer is to be a witness in the case, which was not true here. She also agreed that she likely knew the Waterloo officers "not because of my husband but because I was a prosecutor for over twenty years."

during the criminal proceedings. *Id.* Thus, the judge's partiality could reasonably be questioned. *Id.* at 646. The circumstances here do not raise the same concerns. The judge in Phillips's case was not trying to participate as a party or advocate. Instead, she listened to the attorneys' arguments for both sides and then reached a ruling.

That said, we grant that the judge could have been more dispassionate in rejecting the points raised by the defense. *See* Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges § 15.7, at 435 (2d ed. 2007) (explaining that "a judge who personally refutes a party's allegations of judicial bias . . . may appear to a reasonable person to have exhibited a personal interest in the outcome of the litigation, or to have aligned himself with the party resisting the judge's disqualification"). Still, because the judge's statements came in the context of ruling on the defense motion, they did not cross the line into being adversarial. Nothing else here would make a reasonable person with knowledge of the facts conclude that the judge's impartiality might reasonably be questioned. *See Carter*, 957 N.W.2d at 644. We find no abuse of discretion in the judge's ruling.

## C. Trial Counsel's Conflict of Interest

Phillips next contends the court should have removed his trial counsel based on counsel's conflict of interest having previously represented a State's witness. "Our determination of whether there is a conflict of interest is a mixed question of law and fact." *State v. Mulatillo*, 907 N.W.2d 511, 517 (Iowa 2018). Because deprivation of the right to counsel is a constitutional violation, our review

is de novo.[13]  *Id.*  But the court exercises its discretion when deciding whether counsel has a conflict of interest.  Thus, we review the court's decision for an abuse of discretion.  *Id.*  We are bound by the court's fact findings if they are supported by substantial evidence.  *Id.* at 518.

Attorney disqualification is appropriate if "the circumstances show an actual conflict or serious potential for conflict."  *State v. McKinley*, 860 N.W.2d 874, 880 (Iowa 2015).  An actual conflict adversely affects counsel's performance.  *Id.* at 881.

The first morning of testimony, Phillips was present with his attorneys from the Waterloo public defender's office, Kimberly DePalma and Matthew Hoffey. Hoffey made a record on a potential conflict of interest: "The State has listed [J.W.] as a witness. I just want to advise the court that after the first trial I did represent [J.W.].  She waived any sort of conflict, as did Mr. Phillips."  The court discussed the potential conflict of interest with the parties, including Phillips.  The State didn't believe Hoffey's dual representation would present any issues because J.W.'s case was closed.[14]  When the court asked Phillips if he waived any potential conflict, he said, "No."  Phillips noted that J.W. was also a witness at his robbery trial.  Then Hoffey asked the court for more time to confer with his client.  The court agreed to revisit the question because J.W. was not scheduled to testify until the next week.

---

[13] Although Phillips cites both the federal and state constitutions, he does not argue for a different standard under the Iowa Constitution.  So we apply federal standards for the right to counsel.  *See State v. Sweet*, 879 N.W.2d 811, 817 (Iowa 2016).
[14]  The State originally charged J.W with second-degree burglary; she pleaded guilty to simple misdemeanor trespass.  The State told the court that the plea agreement was not tied to J.W. testifying against Phillips.

Four days later, Phillips filed a written waiver of conflict. As did J.W. She testified about the Linwood Avenue events, and Hoffey briefly cross-examined her.

Phillips argues that when Hoffey brought the potential conflict to the court's attention, it had the duty to inquire into the circumstances. *State v. Watson*, 620 N.W.2d 233, 237 (Iowa 2000). He contends the court violated *Watson* and should have concluded trial counsel had an actual conflict of interest.[15]

His contentions fail for at least two reasons. First, defense counsel did bring the potential conflict to the court's attention, and the court did inquire into it, so *Watson* does not govern. To the extent that Phillips complains the inquiry was inadequate, we disagree. *See State v. Thompson*, 597 N.W.2d 779, 784 (Iowa 1999) (finding court's brief inquiry was adequate when further questioning would not clarify the circumstances).

Second, both Phillips and J.W. waived the conflict. That fact alone sinks his claim. *See, e.g.*, *Bol v. State*, No. 19-0225, 2020 WL 3571807, at *3 (Iowa Ct. App. July 1, 2020) (finding Bol waived the conflict, and Iowa Rule of Professional Conduct 32:1.7(b)(4) allows an attorney to represent even concurrent clients if "each affected client gives informed consent, confirmed in writing"). Phillips insists, "The court's reliance on written waivers of conflict was insufficient to satisfy the court's duty to have a meaningful inquiry about the nature of the conflict." We disagree. The court was diligent in asking about co-counsel DePalma's

---

[15] *Watson* held that failure to inquire into a conflict required automatic reversal. 620 N.W.2d at 237. But that is no longer the rule. *See State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015) ("[A]utomatic reversal is required under the Sixth Amendment only when the trial court refuses to inquire into a conflict of interest over defendant's or counsel's objection.").

involvement in the conflict-of-interest conversation and in giving Phillips a chance to confirm his waiver:

> THE COURT: Okay. Mr. Phillips, a couple of days ago we talked about the fact that Mr. Hoffey represented you in your robbery and then apparently he represented [J.W.] in another matter and now he still is representing you. My understanding is that the issue with [J.W.] has already been resolved and he's not currently representing her, but he did represent her in this year timeframe in between the two. Have you had an opportunity to talk to Mr. Hoffey and Ms. DePalma about those issues?
> THE DEFENDANT: Yes.
> THE COURT: And today are you willing to waive any potential conflict?
> THE DEFENDANT: Yes.

No more was necessary to assure Phillips's waiver was valid.

Finally, Phillips deems it "most troublesome" that Hoffey—not DePalma—cross-examined J.W. *McKinley* addressed the duties owed by attorneys to former clients under Iowa Rule of Professional Conduct 32:1.9. 860 N.W.2d at 882. That rule provides that counsel cannot represent a subsequent client "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Iowa R. Prof'l Conduct 32:1.9(a). But the murder charge against Phillips was "unquestionably not the same matter in which the public defender's office previously represented" J.W. *See McKinley*, 860 N.W.2d at 883. Accordingly, no conflict arose under Rule 32:1.9. *See id.* at 884.

And while Phillips highlights Hoffey's cross-examination of J.W., he does not address how that performance adversely affected his representation in the murder case. *See State v. Smitherman,* 733 N.W.2d 341, 347 (Iowa 2007) (concluding claimed conflict did not require reversal because Smitherman failed to establish the conflict had an adverse effect on trial counsel's representation). In

fact, Phillips makes no argument that Hoffey's trial preparation or strategy were impeded by his prior representation of J.W. Viewing the totality of circumstances, we find no abuse of discretion in the court's actions on the conflict-of-interest claim.

### D. Exclusion of Evidence from Victim's Car

Phillips next contends the court erred in excluding references to the evidence seized from Terrell's car.[16] The defense twice tried to question a witness about the guns and bulletproof vest. The State objected on relevance grounds, and the court sustained the objections. We review evidentiary rulings for an abuse of discretion. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015).

In urging admissibility, defense counsel argued that Terrell's weapons were relevant to their theory that Terrell came from Sioux City to Waterloo with a plan to retaliate for the earlier shooting of a mutual friend. They planned to argue that, although Phillips was present at the earlier shooting, Terrell did not know Phillips was "on the same side." The State responded that the victim's guns were irrelevant because no other evidence in the record supported that theory. The court ruled the evidence was irrelevant: "There's no indication that any of these guns were involved in what happened inside the house, that they were shown, displayed, threatened or in any manner involved."

---

[16] Phillips tries to hitch a constitutional argument to this evidentiary claim. He contends the court's exclusion of this evidence deprived him of the ability to assert his self-defense theory in violation of his Sixth Amendment right to present a defense. As the transcript shows, there was no objection based on Phillips's constitutional rights. So that claim is not preserved for our review. *Trane*, 984 N.W.2d at 434–35. What the transcript shows is that defense counsel explained the theory they wanted to pursue, but the evidentiary rulings determined the evidence was not relevant to any material issue in the case. We confine our discussion to the validity of the evidentiary ruling.

At the close of the defense case, Phillips made an offer of proof through Jeremy Copp, the officer who searched Terrell's car. Copp testified that after the shooting he found a semiautomatic rifle, a loaded magazine, and a bulletproof vest in the trunk, as well as a loaded semiautomatic pistol in the glove box. The defense maintained that evidence was relevant to Phillips's fear of Terrell and to explain why he acted in self-defense. The court still found the evidence was inadmissible:

> The allegation that Mr. Flowers came to Waterloo in retaliation is just that, it's an allegation. There's no evidence of it. And even if he did come to Waterloo in retaliation for the previous shooting, it has no relevance to this particular shooting. It's been clear throughout the testimony that if we're going to look at sides, Mr. Phillips and Mr. Flowers would have been on the same side. So there is no connection between Mr. Phillips shooting Mr. Flowers and the guns out in the car. . . . [T]here is no relevance to this particular case other than an attempt to sully Mr. Flowers' reputation or the opinion of the jury of Mr. Flowers by suggesting that because he had these weapons he was bad or he was doing something nefarious or something of that nature. There's no connection or relevance to this particular incident . . . .

Phillips raised the same issue in posttrial motions, and the court rejected it again.

"Relevant evidence is admissible . . . . Irrelevant evidence is not admissible." Iowa R. Evid. 5.402. Evidence is relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence; and . . . [t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. "Whether the necessary minimum level of logical connection between the offered evidence and the fact to be proven exists is a legal question lying within the broad discretion of the trial court." *State v. Thompson*, 954 N.W.2d 402, 407 (Iowa 2021) (quoting *State v. Tracy*, 482 N.W.2d 675, 680–81 (Iowa 1992)).

On appeal, Phillips contends that Terrell's guns, ammunition, and tactical vest were relevant to show his violent propensities and Phillips's reasonable belief

that the use of force was necessary. He also claims the group's access to those weapons explained his flight in J.W.'s Honda after the shooting.

In analyzing this claim, we recognize that "[r]elevance is a relatively low bar." *State v. Thoren*, 970 N.W.2d 611, 622 (Iowa 2022) (citation omitted). On the other hand, "[d]istrict courts enjoy a rather broad discretion in determining issues of relevancy." *State v. Harris*, 589 N.W.2d 239, 243 (Iowa 1999). Luckily, we need not choose between these competing concepts today. We may sidestep the admissibility question because Phillips cannot show that his substantial rights were affected by the exclusion. *See* Iowa R. Evid. 5.103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."); *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004).[17]

Even if we agreed the evidence should have come in, "[n]ot all evidentiary errors require reversal." *Sullivan*, 679 N.W.2d at 29 (alteration in original) (citation omitted). Learning about the guns in Terrell's car would have contributed little to the jury's fact-finding. The record already showed it was common knowledge among the witnesses that Terrell always carried a gun. And the State offered plenty of evidence to support the jury's conclusion that Phillips acted without justification. Thus, assuming the evidence that Terrell had more guns, ammunition, and a bulletproof vest—all lawful possessions—in his car was

---

[17] Phillips argues we should apply the prejudice standard for constitutional error, requiring proof of harmlessness beyond a reasonable doubt. *See State v. Simmons*, 714 N.W.2d 264, 275 (Iowa 2006). But because we are addressing evidentiary error, we ask if his rights "have been injuriously affected" or if "he has suffered a miscarriage of justice." *Sullivan*, 679 N.W.2d at 29 (citation omitted).

relevant to Phillips's justification defense, it was minimally so. Because the exclusion was harmless, we decline to reverse.

### E. Subsequent Bad Acts Evidence

Phillips's next claim involves the admission of evidence that he committed other bad acts after leaving the shooting scene. He contends the court abused its discretion in allowing the State to offer testimony about the events at Linwood Avenue. The court found the evidence relevant and not unfairly prejudicial, but it restricted parties from using the word "robbery" or mentioning the previous trial.

Phillips argues his subsequent bad acts were inadmissible under Iowa Rule of Evidence 5.404(b). That rule states:

> (1) Prohibited uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted uses. This evidence may be admissible for another purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident.

Our supreme court has described rule 5.404(b) as a rule of exclusion: unless the prosecutor can voice a legitimate, noncharacter theory of admissibility for the bad-acts evidence, such evidence is out. *See Thoren*, 970 N.W.2d at 625. We use a three-step test to decide whether other acts evidence is admissible. *See State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014). First, the evidence must be relevant to a legitimate issue in dispute. *Id.* Second, there "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* (citation omitted). Third, its probative value must not be "substantially outweighed by the danger of unfair prejudice to the defendant." *Id.* (citation omitted).

Again, we are not compelled to settle the question of admissibility. Even if the court abused its discretion in overruling the defense motion in limine, allowing testimony about the Linwood Avenue events did not affect Phillips's substantial rights. *See* Iowa R. Evid. 5.103(a). His confrontation with L.Y.-F. was minor compared to the murder. And there was ample evidence from which the jury could find that Phillips was not justified in shooting Terrell—even before his attempt to flee while taking money and a car from his friends. Given the overwhelming evidence of Phillips's guilt, we conclude that any error from the admission of the subsequent bad acts was harmless. *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008).

Finding no grounds for reversal, we affirm.

**AFFIRMED.**